Sharon K. COLE, Appellant,

v.

Hardy David COLE, Respondent.

No. 13062.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 31, 1984.

Motion for Rehearing or Transfer
Denied Feb. 10, 1984.

Application to Transfer Denied
March 20, 1984.

William J. Fleischaker, Roberts, Fleischaker & Scott, Joplin, for appellant.

Dwight Douglas, Douglas, Douglas & Johnson, Neosho, for respondent.

HOGAN, Judge.

This appeal is taken from an order changing the custody of the parties' son from the appellant mother to the respondent father. We reverse.

The parties were divorced in July of 1980. The decree which was entered awarded custody of the parties' children to the mother. The father has remarried; the mother has not. Both parties live in Joplin or in the area of Joplin. The father is an over-the-road truck driver; the mother is a licensed practical nurse.

The subject of this custody dispute is a male child, Hardy David Cole, II, who was about 4 years old at trial time. Hardy has been in his mother's custody at all times since he was born.

At the father's request, Hardy was examined by a clinical psychologist, Dr. Mason W. Dikeman. Dr. Dikeman testified that he had seen Hardy on three occasions. On each occasion, he spent about an hour with the child. Dr. Dikeman's description of his findings in September 1981 (Hardy was then almost 3 years of age) was as follows:

"The observations of my own in terms of manually, in terms of his physical functioning abilities, Hardy [was] performing at average to above average skill level. His reactive speech, which is an assumption—'Hardy, go to the door; Hardy, go to the chair'—his reactive speech [was] intact. His expressive speech [was] delayed approximately six to nine months at that point in time."

Dr. Dikeman explained that "reactive" speech refers to one's ability to understand orders or suggestions; "expressive" speech refers to one's ability to articulate thoughts and communicate ideas. As the doctor put it, "expressive" power of speech means the ability to "'describe it, explain it.'"

In March 1982, Dr. Dikeman concluded that Hardy "[did] not look like he [was] being stimulated to communicate with his environment verbally, and . . . his functional retardation [was] becoming more pronounced. . . . He [was] not expressing himself the way he should . . . ." In September 1982, Dr. Dikeman's observations were about the same, except that he noticed Hardy was not developing motor skills, e.g., the ability to use a crayon or pencil as he should. Dr. Dikeman concluded that Hardy needed: 1) "a language enrichment program, speech around him, speech involving him; [2)] a good pre-school experience where there is an encouragement for developing appropriate skills for his age." Pressed on cross-examination, Dr. Dikeman concluded Hardy was about 6 months behind the norm in his development of "expressive" speech. He believed Hardy's deficiencies were correctible "prior to school attendance."

Dr. Dikeman did not note, or at least testify, that Hardy showed any signs of physical abuse, nor did he testify that Hardy exhibited any organic motor or cognitive deficit. Given full and uncritical credence, his testimony is that at 4 years of age, Hardy does not express himself as well as he might and is a little clumsy.

■ We conclude there was no evidence of a change in the circumstances of the child or his custodian which would make a change of custody necessary to serve the best interests of the child. The father has suggested that Hardy's welfare would be better served if Hardy were with him. However, the father's present wife has been employed as a truck driver, has never had any experience rearing children and even

assuming Hardy is developing his speech skills poorly, there is no evidence that his problems would be corrected more quickly if custody were awarded to the father. Further, there appears to be no reason why the father should not assist the mother in seeking help for Hardy, as that assistance is available in Joplin.

■ A party seeking a post-dissolution change of custody has the burden of showing a substantial change of conditions which necessarily requires a change of custody to serve the best interests of the child. *In re Marriage of Britton,* 574 S.W.2d 475, 476[2] (Mo.App.1978). No such change of conditions has been shown here. Cf. *Britton,* 574 S.W.2d at 476; *Lowe v. Lindley,* 272 S.C. 143, 249 S.E.2d 750 (1978). There is no substantial evidence to support the judgment rendered and accordingly the judgment modifying the original decree is reversed.

MAUS, P.J., and PREWITT, J., concurs.