**Beth  WEINBAUM,**
**Petitioner-Respondent,**

v.

**David  WEINBAUM,**
**Respondent-Appellant.**

**Nos. 13446, 13549.**

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 10, 1984.

As Corrected Oct. 1, 1984.

Motion for Rehearing or Transfer
Denied Oct. 3, 1984.

Application to Transfer Denied
Nov. 20, 1984.

Frank Susman, Roselee Adlin, Michael Waxenberg, Susman, Schermer, Rimmel & Parker, St. Louis, for petitioner-respondent.

Harvey M. Tettlebaum, Jefferson City, Harold F. Glass, Springfield, for respondent-appellant.

MAUS, Presiding Judge.

The decree dissolving the marriage of the parties to this appeal placed the primary custody of their two young children with the wife. By his second motion to modify the husband seeks primary custody of those children. The trial court denied that relief and entered a judgment defining in detail periods of temporary custody and visitation by the husband. The husband appeals.

A general outline of the facts will be sufficient as background for the initial consideration of those points. The parties were married in September, 1970. Two children were born to the marriage. At the time of trial, Aaron Ross was nine years old and Amy Ellen was five years old. They moved to Rolla in 1975. The husband is a successful businessman. The wife has a degree in elementary education but since the birth of the children has not been employed outside the home.

The marriage was dissolved on March 21, 1980. A separation agreement was approved. As stated, the wife was awarded the primary custody of the children. The husband was "to have right to have children visit him on reasonable occasions." Soon thereafter, the wife filed a motion to modify to permit her to move with the children to Florida. It is apparent from the record she had relatives living in that state. In turn, the husband filed a motion to modify seeking custody of the two children. On July 25, 1980, both motions were denied.

In June, 1980, the mother sold her home in Rolla. In July, 1980, the mother moved to St. Louis. For a short time, she and the children stayed in a motel. In August, 1980, she moved to a townhouse. On August 29, 1982, the wife married Leslie Tzinberg. Mr. Tzinberg has periodic custody of three daughters by his prior marriage. The wife and Mr. Tzinberg purchased and live in a home in Chesterfield. The post dissolution relationship between the wife and husband was described as "strained", "kind of nasty." This relationship apparently exacerbated problems concerning visitation and temporary custody. In turn, those problems caused a further deterioration of the relationship between wife and husband.

Upon moving to St. Louis, the wife had Aaron evaluated by a psychologist. This psychologist commenced treating Aaron. From the fall of 1982 to April, 1983, when it was terminated, that treatment was rendered by twice weekly phone calls. In addition to that treatment, the psychologist acted as mediator between the parties in regard to their differences concerning visitation and periods of temporary custody. The psychologist prepared written plans or schedules for the parties to follow in this regard. For a time, the recommendations of the psychologist concerning visitation and custody were generally followed.

While the wife lived in Rolla, the husband attempted to visit the children every day. After the hearing of July 25, 1980, the husband had custody of the children on alternate weekends. He also had temporary custody for two months in the summer of 1981 and for two months in the summer of 1982. There is some reference in the transcript that these periods of temporary custody were pursuant to a court order. However, no such order is a part of the record. There was also an indication

from the transcript these periods of temporary custody were in accordance with the plans of the psychologist. In August, 1982, the wife agreed that Aaron could stay with his father that fall on a temporary basis. The husband contended she agreed that his custody could be transferred to the husband.

On August 31, 1982, the husband filed a motion to modify that instituted this proceeding. That motion was accompanied by an application for a temporary restraining order preventing the wife from removing Aaron from the physical custody of the husband. That application was supported by an affidavit of the husband and an affidavit of the psychologist. A temporary restraining order was entered that day. On September 8, 1982, by stipulation, a temporary injunction to the same effect was entered. The latter provided for each parent to have temporary custody of both children on alternate weekends. This custody arrangement continued to the date of the decision of the trial court. Concerning the husband's continued custody, the wife testified, "I think—my consideration of him being down there was the biggest mistake of my life that I have ever made."

By subpoints, the husband contends the judgment of the trial court is against the weight of the evidence and is against the best interests of the children. While this statement does not comply with Rule 84.-04(d), because of the issues involved, the subpoints will be accepted as a contention the trial court erred in not granting the modification prayed. Neither party requested findings of fact under Rule 73.-01(a)(2). None were made. In considering this point, this court must consider the fact issues as having been found in accordance with the result reached. Rule 73.01(a)(2).

To support these subpoints, in argument the husband stresses the following. The wife's acquiescence in his custody of Aaron. Aaron's happiness and improvement in school in Rolla. The wife's remarriage to a man with whom Aaron did not get along. Aaron's pleasant surroundings and associations in Rolla. During the trial, the husband, by extensive questioning, attempted to establish his devotion to the children by visitation and daily phone calls. He emphasized the fact the wife and the step-father listened to and taped some of those phone calls. He presented in detail his activities and close association with Aaron. Neither child testified. However, by cross-examination of the wife, the husband placed before the court the fact Aaron preferred to live with him.

The husband's reliance on this evidence discounts evidence which would support the following findings and inferences by the trial court. The temporary injunction continuing the husband's physical custody of Aaron was entered upon a stipulation that it would not waive any position either party might have in connection with the motion pending before the court. The husband agreed it was undesirable to separate the children. Aaron did well in school in St. Louis. He had friends in the St. Louis school and in his home neighborhood in St. Louis. He was well prepared for the third grade when he entered school in Rolla. The step-father testified that he did not really know Aaron. He did stop Aaron from strangling his sister and promised to spank him if that happened again. That conduct stopped. The husband's phone calls included repetitive entreaties and questions such as: "Do you love me;" "do you miss me;" "I wish you were here;" "what did your mother do today;" "are you having a good time in St. Louis?" After the calls, the children would be upset. The husband also taped calls between himself and the children and the wife and the children. The husband brought a witness each time he returned or picked up the children in St. Louis. According to Aaron, this was so the husband could get Amy. Following association with the husband, Aaron was hostile to the wife. Following the husband's temporary custody of Aaron, Aaron announced to his mother, "We're going to get Amy, it's just a matter of time, Dad talked to the Judge, and we're going to get her."

The burden was upon the husband to establish "a substantial change of conditions which necessarily requires a change of custody to serve the best interests of the child." *Cole v. Cole,* 664 S.W.2d 653, 655 (Mo.App.1984). The evidence did not compel the trial court to find the husband met that burden.

By a related subpoint, the husband contends the trial court did not follow the law in measuring the sufficiency of the evidence. Upon the conclusion of the trial on July 12, 1983, the trial court took the case under advisement. On August 10, 1983, the trial court made an extensive docket entry which included the following language: "Court finds there has been no significant change of circumstances since the previous order of this court entered 7–25–80 to warrant a change in custody of the minor children of this marriage to wit: Amie [sic] and Aaron Weinbaum." The docket entry also contained detailed provisions concerning visitation and temporary custody by the husband. It did not include an express finding concerning the best interests of the children.

On August 12, 1983, a formal judgment was signed by the trial judge and placed upon the record. The formal judgment contained the following language: "No change as envisioned by Mo.R.S. § 452.410 has occurred in the circumstances of the parties' children or Petitioner [Beth] since the Court's order of July 25, 1980 and modification of custody is not necessary to serve the best interests of the children."

The husband contends the docket entry is a judgment. He further argues that he had no notice of the entry of the formal judgment as required by Rule 75.01 and cases such as *Byrd v. Brown,* 613 S.W.2d 695 (Mo.App.1981). Therefore, he concludes, the formal judgment entry is void.

The husband is correct in saying that a judgment may be rendered by a docket entry. *Sears v. Norman,* 543 S.W.2d 300 (Mo.App.1976). In this case there was no expressed reservation of finality pending the preparation of a formal judgment. Compare *Orgill Bros. and Co.,*

*Inc. v. Rhodes,* 669 S.W.2d 302 (Mo.App. 1984); *Munn v. Garrett,* 666 S.W.2d 37 (Mo.App.1984). It was not a statement of intention to render a judgment. *Marsden v. Nipp,* 325 Mo. 822, 30 S.W.2d 77 (1930). Nor was the docket entry an order merely authorizing the entry of a judgment. *Campbell Sixty-Six Express, Inc. v. Dalton,* 378 S.W.2d 558 (Mo.1964).

However, this does not mean the formal judgment was void. The procedure followed by the court was described and approved in the following language.

If this was done in accordance with the minutes of the judge entered upon the 'court docket,' or the minutes of the clerk made at the time of the rendition of the final judgment in the cause, there was nothing improper in the attorney writing the judgment and decree out in full, or the clerk spreading it upon record after the adjournment of court for the term. This is the practice in most of the circuits, and there is no impropriety in it, as the judgment is in fact rendered when the entry is made by the clerk on his minutes in accordance with announcement of the court.

*Pelz v. Bollinger,* 180 Mo. 252, 79 S.W. 146, 147 (1904). Also see *Fleming v. Clark Township of Chariton County,* 357 S.W.2d 940 (Mo.1962); *Harrison v. Slaton,* 49 S.W.2d 31 (Mo.1932); *State ex rel. State Farm Mut. Auto. Ins. Co. v. Murray,* 438 S.W.2d 300 (Mo.App.1969). The procedure is reviewed in *Sears v. Norman, supra.* That is the procedure contemplated by Missouri Twenty-Fifth Judicial Circuit Court Rule 54.1 which provides: "Unless otherwise ordered, the attorney for the prevailing party shall prepare and submit the form of judgment entry to the court for its approval." For a discussion of conflict between a docket entry and a formal judgment and the remedies therefor, see *Raymond v. Love,* 192 Mo.App. 396, 180 S.W. 1054 (1915). Concerning the date of the judgment embodied in the formal judgment entry see *State ex rel. Green v. Hender-*

*son,* 164 Mo. 347, 64 S.W. 138 (banc 1901). The formal judgment is not void.

■ Further, the husband insists the judgment of the docket entry is erroneous because, "[b]y this judgment, the Court errs in applying the law in two respects: (1) the Court requires that a change of circumstances must be 'significant' in order to justify a modification of custody; and, (2) the Court fails to make a finding regarding the best interests of the children." Even assuming the judgment is controlled by the language of the docket entry, it is not erroneous because of this criticism by the husband. It is clear that not every change of circumstances, of whatever nature or however slight, will provide the basis for a modification. Read in its entirety, the docket entry is a clear expression of the decision of the court there was no change of circumstances within the meaning of § 452.410. Compare *Cole v. Cole,* supra. The trial court applied the correct standard in measuring the sufficiency of the evidence.

By a subpoint, the husband contends the judgment must be reversed because the trial court did not admit exhibit D and did not admit testimony concerning that exhibit. Exhibit D is a letter dated August 27, 1982, from the wife's attorney to the husband's attorney. The letter was accompanied by a proposed modification. That modification provided for the transfer of custody of Aaron from the wife to the husband. It also provided child support for the daughter Amy to be increased from $1,000 per month to $2,000 per month.

The husband cites only two instances in which testimony concerning that exhibit was not admitted. The first reference is to the following question: "Isn't it a fact that in August of 1982 that you made a demand that David continue paying you $2,000 a month in child support after Rolla—after Aaron moved to Rolla?" No other offer of testimony concerning the exhibit is for review. The second citation is to a comment of the trial court.

■ The trial court refused to admit the exhibit because it considered the letter to be an integral part of settlement negotiations. See *Tripp v. Harryman,* 613 S.W.2d 943 (Mo.App.1981). The husband at trial presented protracted and repeated arguments for its admission. He does so on appeal. When distilled, those arguments are that the exhibit and testimony were admissible to establish the wife's motive. To preserve error by the exclusion of evidence, it is necessary that an offer of proof state with clarity the basis for admissibility. "An offer of proof must demonstrate the relevancy of the testimony offered, must be specific, and must be definite." *Karashin v. Haggard Hauling & Rigging, Inc.,* 653 S.W.2d 203, 205 (Mo. banc 1983). There was not a clear specification of what action of the wife resulted from the motive to be so established. For this reason, the subpoint cannot be sustained.

Nevertheless, again because the issue involves the welfare of children, this court will consider that the husband was referring to the wife's motive to gain $1,000 per month by opposing the transfer of custody of Aaron to husband. The boundaries for determining the admissibility of settlement negotiations in respect to matters of child custody are ill-defined. For the purpose of considering this subpoint, this court will assume, but does not hold, that the exhibits and proffered testimony were admissible.

However, it is established "[t]here is no reversible error in the exclusion of evidence in a court-tried case where the evidence is in the record and may be considered by the appellate court." *Miller v. Gayman,* 482 S.W.2d 414, 420 (Mo.1972). "Refusal to admit evidence does not constitute reversible error unless it would have changed the result reached." *Green v. Stanfill,* 641 S.W.2d 490, 492 (Mo.App.1982).

■ The wife's motivation in desiring to retain custody of the two children was an inherent issue in this proceeding. As noted, the wife explained her change of position when she testified, "I think—my consideration of him being down there was the biggest mistake of my life that I have ever made." Under Rule 73.01(a)(2), this court

must consider the trial court determined the wife was properly motivated. There is no reason to believe that determination would have been altered by the admission of what the trial court considered settlement negotiations. The exclusion of that exhibit and proffered testimony does not constitute reversible error.

■ The husband's next subpoint is that he was unduly restricted in cross-examining the wife concerning statements made to her by the psychologist. This psychologist did not testify in person or by deposition. The husband tried to put in evidence her opinions concerning the children and the conduct of the parties by way of hearsay. This subpoint is directed to that effort. The fact the wife initially consulted that psychologist does not permit the husband, over proper objection, to present such opinions by what the psychologist told the wife, told him or told a third person. "[T]he question sought an answer not as to statements made by the witness being cross-examined, but as to statements made to the witness by another. The hearsay rule operates to render such testimony incompetent and hence inadmissible." *Harrolle v. State*, 235 So.2d 44, 45 (Fla.App. 1970). Compare *Midwest Library Service v. Structural Systems*, 566 S.W.2d 249 (Mo.App.1978). The subpoint is denied.

Section 452.400.2 in part provides: "[T]he court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger the child's physical health or impair his emotional development." A similar limitation is found in § 452.400.1 dealing with initial visitation rights of a parent not granted custody. It is also found in § 452.402 dealing with the visitation rights of certain grandparents.

In this case, the original decree provided the husband was "to have right to have children visit him on reasonable occasions." Since July of 1980, under the circumstances noted, the husband had temporary custody every other weekend and for an extended time in the summers. By the modified decree resulting from the hearing in question, the husband is granted temporary custody on the second and fourth weekends. He contends this is a reduction from 26 weekends per year to 24 weekends per year. He concludes that portion of the decree is invalid because the court did not make the specific finding referred to in § 452.400.2.

■ For resolution of this point, it is not necessary to develop at length the definitions and relationship of custody or temporary custody as compared to visitation. Nor is it necessary to determine whether § 452.410 or § 452.400.2 is applicable. See *Feese v. Feese*, 613 S.W.2d 882 (Mo.App. 1981). It is enough to hold that the limitation is not applicable to a change from "visit him on reasonable occasions" to the rights of temporary custody and visitation detailed in the decree of modification.

The husband's last point concerning the motion is, "The circuit court erred in permitting a psychologist to testify about statements made to her by respondent because they constitute hearsay."

In argument the husband states:

Dr. Brown then proceeded to state the history of the children, recount certain problems, and make specific references to past treatment. The Court then, upon request of Appellant's counsel, directed that the record show that the hearsay objection run to each and every question of Dr. Brown. Based on this hearsay evidence, Dr. Brown stated certain conclusions and suggestions.

The transcript does not support this argument.

■ Dr. Nancy Brown is a clinical psychologist first consulted by the wife on September 20, 1982. Dr. Brown did not relate the history of the children or recount certain problems or make specific references to past treatment. Dr. Brown administered and caused to be administered extensive tests to evaluate the children. She gave her professional opinion concerning the condition of the children based upon those tests. Her recommendations stated principles generally applicable to children of separated parents or were in response to

a question hypothetical in nature or were based upon those tests.

The husband argues Dr. Brown stated conclusions based upon her analysis of transcripts of taped telephone calls. She based no conclusions upon those transcripts. She did express her general opinion concerning telephone contact between children and non-custodial parents. The husband's last point is denied. The judgment upon the motion to modify rendered on August 10, 1983, is affirmed.

After the husband's appeal from that judgment, the wife filed a motion for attorney's fees and costs on appeal. The husband then filed an application for change of judge which the trial court denied. A hearing was held at which both parties presented evidence. The court then awarded attorney's fees and costs on appeal to the wife. The husband has appealed from that judgment. That appeal was consolidated for hearing and decision before this court with the appeal from the denial of the motion to modify.

■ The husband asserts that the trial court's denial of his application for a change of judge is reversible error. The husband's contention is that the motion for fees and costs is an independent proceeding and therefore a civil action allowing for a change of judge under Rule 51.05. A substantially similar question was decided in *Dardick v. Dardick*, 661 S.W.2d 538 (Mo. App.1983). In *Dardick*, the appellant applied for a change of judge on the respondent's motions for temporary maintenance, attorney's fees and costs pending appeal. All applications were denied. There the court held, "[a]lthough a motion pendente lite is a separate and distinct proceeding from the underlying divorce decree, it is incidental to and engrafted on the divorce decree. It is not a 'civil action' as the term is meant under Rule 51.05(a)." *Dardick v. Dardick*, supra, at 540. *Prather v. Prather*, 263 S.W.2d 57 (Mo.App.1953), also supports this result in holding that a motion to quash an execution for unpaid alimony pendente lite and attorney's fees was not an

independent proceeding, but is regarded as an adjunct to the original case.

The husband relies on *Simms v. Simms*, 253 S.W.2d 814 (Mo.1953). But, as the *Dardick* case points out, *Simms* discusses whether the motion to modify is an independent proceeding for purposes of appeal. "*Simms*, ... speaks only to the independent nature of the two proceedings—an appeal from an underlying dissolution decree and an appeal from the granting of a motion pendente lite." *Dardick v. Dardick*, supra, at 542. The husband also cites *Mince v. Mince*, 481 S.W.2d 610 (Mo.App. 1972) as supporting the independent proceeding argument. But the *Mince* case states, "[a]n ancillary proceeding, in legal usage, is one subordinate to or in aid of another primary action, in this sense, a motion for an attorney fee brought consequent to a motion to modify a decree of divorce is adjunctive of and ancillary to that motion to modify." *Mince v. Mince*, supra, at 614. Neither case is contrary to *Dardick*, which this court follows.

■ The husband's other point on this appeal is that there was insufficient evidence that wife was unable to meet the expenses of litigation. The Missouri Supreme Court has held that financial need of the movant is only one factor to be considered. The statute (§ 452.355, RSMo 1978) states, that after considering all relevant factors, including the financial resources of both parties, the court may award reasonable fees. *Kieffer v. Kieffer*, 590 S.W.2d 915 (Mo. banc 1979). "Only when the trial court is shown to have abused the broad discretion with which it is vested in this regard, should its award be overturned." *Kieffer v. Kieffer*, supra, at 919. In the present case, the evidence before the trial court included the facts the wife was not employed outside the home and that the husband in 1981 had income for wages, salary and tips of $133,836. The judgment for attorney fees and costs is affirmed.

HOGAN and PREWITT, JJ., concur.