In re the MARRIAGE OF Robbie M. AMOS and Brenda F. Amos.

Robbie M. AMOS, Respondent–Appellant,

v.

Brenda F. (Amos) EVANS, Movant–Respondent.

No. 17849.

Missouri Court of Appeals, Southern District, En Banc.

Dec. 21, 1992.

---

Richard L. Schnake, Neale, Newman, Bradshaw & Freeman, Springfield, Harry Rupert Stafford, Jr., Hartville, for respondent-appellant.

J. Christopher Allen, O'Neil & Allen, Lebanon, for movant-respondent.

PER CURIAM.

Robbie M. (Mike) Amos appeals from an order of the Circuit Court of Laclede County, entered September 24, 1991, modifying a decree of dissolution entered in that court on December 22, 1987. The modification was entered pursuant to a motion filed by Brenda F. (Amos) Evans on April 12, 1989. This opinion, like appellant's brief, will refer to appellant as Mike and movant-respondent as Brenda.

By the original decree, Brenda was awarded custody of the two children born to the marriage, Lauren, who was born September 18, 1982, and Cory, who was born December 31, 1984. Mike was awarded visitation rights to the children as follows: On all reasonable occasions; on Tuesday and Thursday; every other weekend; alternating holidays; and three nonconsecutive two-week periods in the summer.

The instant order modified the original decree in the following respects: (a) Joint legal custody of the two minor children was awarded to Mike and Brenda, with Brenda to be the sole physical custodian; (b) Mike's visitation with the children on Tuesdays and Thursdays, which was overnight when exercised, was terminated. Other visitation rights accorded Mike by the original decree were left intact or clarified in a manner not complained of; (c) Mike's obligation to pay child support for each child was increased from $120 per month to $288.41 per month, with the increase to be retroactive to April 14, 1989, the date on which the motion to modify was served on Mike.

On this appeal Mike contends that the trial court erred in terminating his Tuesday and Thursday visitation, in increasing the amount of his support, and in making the increase retroactive.

Mike's first point is that the trial court erred in terminating his Tuesday and Thursday visitation, because the evidence does not support the trial court's finding that continuation of that visitation would impair the emotional development of the children in that Brenda's reason for termination of that visitation does not show such impairment, and her willingness to permit Mike to visit the children at other times during the week shows that no such impairment could exist.

Lauren and Cory reside with Brenda at her home in Lebanon. Mike lives on a farm approximately 15 miles south of Lebanon. Mike is an employee of the Social Security Administration, and he runs a livestock operation at the farm.

At the hearing on the motion to modify, held June 25, 1991, Brenda testified that both children attend elementary school in Lebanon. In the fall, Lauren will enter the third grade and Cory will enter the first grade. The children have activities during the week. Lauren is playing softball, and both children have swimming lessons during the day. Last year they had Spanish lessons after school. They participate in gymnastics after school. Gymnastic classes are available for the children only

on Tuesdays and Thursdays. Lauren attends gymnastics class from 4 p.m. to 6 p.m., and Cory attends from 5 p.m. to 6 p.m. Last year the children participated in community theater, which involved practicing every night and which conflicted with Mike's Tuesday and Thursday visitation. During the week the children follow a set schedule, arising at 6:30 a.m. and retiring at 8:30 p.m.

Brenda testified that Mike stopped exercising his Tuesday and Thursday visitation in September 1990. Before he did that, Mike would return the children at 6:15 a.m. the next morning, often before Brenda was out of bed. Prior to September 1990, Mike did not always exercise his Tuesday and Thursday visitation, which was at his discretion. Brenda did not know until 4 p.m. or later whether he was going to pick them up. The weekday visitation was disruptive to Brenda. She was enrolled in a college class on Thursday night, and she did not know whether Mike would pick the children up or whether she would have to find a baby-sitter at the last moment.

Brenda testified that the weekday visitation was disruptive for the children when Mike did not pick them up. If Mike didn't show on Tuesday or Thursday night, they would say, "Where's Dad." "It was very unsettling for them to be told something and then it not happen." Brenda asked Mike to be consistent in exercising the Tuesday and Thursday visitation, but he failed to do so.

Brenda testified that terminating the Tuesday and Thursday visitation would allow her to monitor the children's progress in school and their homework better. Brenda did not request modification of Mike's weekend visitation or summer visitation. She testified, on cross-examination, that she had no objection to Mike seeing the children any night of the week when they didn't have something scheduled or when he could take them to a scheduled activity, so long as they were in bed by their usual time.

Mike testified that the Tuesday and Thursday visitations ceased in September 1990. He said, "I experienced all kinds of problems, all activities were scheduled on Tuesday and Thursday nights, and when there were no activities they simply weren't home." He also testified that he was able to handle the children, help them with their homework, and get them to bed on time. He said it would be a hardship for him to try to exercise his Tuesday and Thursday visitation if he had to wait until after the children's activities ended. He gets off work in Lebanon at 4 p.m. and then has regular farm chores to do. To exercise Tuesday and Thursday visitation, he would have to go home "and drive 30 miles to come back and pick them up" or wait until after they got off and then be late in getting home and doing the chores. He also testified that he thought it was important for the children to be able to take part in gymnastics during the school year.

The findings of the trial court included: The children attend elementary school and have scheduled activities on Tuesday and Thursday after school, including gymnastics, which are only available on Tuesday and Thursday after school; since September 1990, Mike has failed to exercise Tuesday and Thursday visitation; "[Mike's] visitation with the minor children on Tuesdays and Thursdays is not in the best interests of the minor children, and said visitation is hereby terminated. In making this decision, the court has considered the applicable factors contained in § 452.400 RSMo. and finds said visitation would impair the emotional development of the minor children."

Section 452.400,[1] as amended in 1989, reads, in pertinent part:

1. A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger the child's physical health or impair his emotional development. The court shall define the noncustodial parent's visita-

---

**1.** Unless otherwise indicated, all references to statutes are to RSMo 1986, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

tion periods in detail at the request of either party.

2. The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child, but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger the child's physical health or impair his emotional development. When a court restricts a parent's visitation rights or when a court orders supervised visitation because of allegations of abuse, a showing of proof of treatment and rehabilitation shall be made to the court before unsupervised visitation may be ordered. "Supervised visitation", as used in this section, is visitation which takes place in the presence of a responsible adult appointed by the court for the protection of the child.

█ Review of the instant order is governed by Rule 73.01, as construed in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Flaton v. Flaton*, 777 S.W.2d 948, 951 (Mo.App.1989); *Keith v. Keith*, 708 S.W.2d 350, 352 (Mo.App.1986); *Gayman v. Gayman*, 559 S.W.2d 617, 618 (Mo.App. 1977). The trial court's judgment will be affirmed unless it is not supported by substantial evidence or is against the weight of the evidence or erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32.

█ In matters pertaining to visitation rights, this court should accord due deference to the trial court's assessment of what serves the best interests of the child. *Keith*, 708 S.W.2d at 352. A determination of visitation rights will not be overturned unless the appellant demonstrates that the order was not in the best interests of the child. *Id.* Where both parties are proper parents, each has a right to reasonable access to the children. *Id.* Overnight visits may be a part of reasonable visitation rights within the meaning of § 452.400, *Id.* at 352–353, and thus not governed by the provision of § 452.410 which requires certain proof before a prior custody decree is modified. *Id.* The trial court may believe all, part or none of the testimony of a witness. *Id.*

█ The best interest of the child is the principal factor. *Winters v. Winters*, 617 S.W.2d 585, 590–591 (Mo.App.1981); *Gayman*, 559 S.W.2d at 618.

█ Mike's first point, previously stated, challenges the finding of the trial court that Mike's Tuesday and Thursday visitation would impair the emotional development of the minor children. Mike argues that the evidence is insufficient to support that finding and that such a finding was a statutory prerequisite to withdrawal of Mike's Tuesday and Thursday visitation. For the reasons which follow, this court holds that the challenged finding was not a statutory prerequisite to withdrawal of Mike's Tuesday and Thursday visitation. Mike's argument that the challenged finding was unsupported may well have merit if the impairment standard was implicated. The record is clear that Mike would be a proper custodian of the children.

Although the instant order terminated Mike's Tuesday and Thursday visitation rights, it did not disturb his other visitation rights. As to the rights left intact, the trial court did not impose any restrictions. Mike's visitations on alternate weekends and alternate holidays, and his summer six-week visitation, may be exercised by him without any interference or supervision. The issue is whether the instant order *restricted* Mike's visitation rights within the meaning of the first sentence of § 452.-400.2.

Cases lending support to the argument that the instant order is not a restriction include: *Wilhelmsen v. Peck*, 743 S.W.2d 88 (Mo.App.1987); *Weinbaum v. Weinbaum*, 679 S.W.2d 384 (Mo.App.1984); *Winters v. Winters*, 617 S.W.2d 585 (Mo. App.1981). Cases tending to support a contrary argument, or containing broad language to that effect, include: *Wexelman v. Donnelly*, 782 S.W.2d 72 (Mo.App.1989); *Flaton v. Flaton*, 777 S.W.2d 948 (Mo.App. 1989); *Shepherd v. Shepherd*, 719 S.W.2d 115 (Mo.App.1986); *Feese v. Feese*, 613 S.W.2d 882 (Mo.App.1981); *L.L.T. v. P.A.T.*, 585 S.W.2d 157 (Mo.App.1979).

These cases will be discussed in chronological order.

In *L.L.T. v. P.A.T.*, the original decree granted the father visitation rights, and the modified decree terminated them. The court said that the modified decree "had reference only to a restriction of visitation rights." The case dealt with a termination of all visitation rights, as distinguished from a reduction.

In *Feese*, in a modification proceeding, the mother was unsuccessful in her attempt to limit the visitation rights of the father. There was no reduction of the father's visitation.

In *Winters*, the original decree gave the father "temporary custody" for three months each summer, alternate holidays, and all weekends during the school year. The modified order changed the father's visitation rights to 30 days each summer. The father argued that the evidence was insufficient to support the modification. Rejecting that argument, the court cited *Gayman v. Gayman*, 559 S.W.2d 617 (Mo. App.1977), for the principle that "the 'best interests' of the child is the polestar to guide on when charting restrictions to parental visitation rights." The court then said, at 591:

> In the *Gayman* case, there was nothing said as to a necessity to find that in a restriction of visitation rights, the visitation would endanger the child's physical health or impair his emotional development. *In this case, there was no entire restriction on appellant's visitation rights. There was just a reduction of the same, and thus there was no requirement to make the foregoing findings.* (Emphasis added.)

In *Weinbaum*, the original decree gave the father the right to visit the children "on reasonable occasions." Under that decree, he exercised "temporary custody" every other weekend. The modified decree granted him temporary custody on the second and fourth weekends. On appeal, the father contended that this was a reduction from 26 weekends per year to 24 weekends per year and that the modification was invalid because the trial court did not make

the specific findings referred to in § 452.-400.2. The court said it was unnecessary to determine whether § 452.410, dealing with modification of custody, or § 452.400, dealing with modification of visitation, was applicable, and said, at 390: "It is enough to hold that the limitation is not applicable to a change from 'visit him on reasonable occasions' to the rights of temporary custody and visitation detailed in the decree of modification." *Weinbaum* is consistent with *Winters*.

In *Shepherd*, a decision of this district, the original decree gave the father weekend visitation 26 times per year. Under the modified order, he was given weekend visitation 12 times per year. The court said that such a modification placed a burden on the mother to prove that continuation of the visitation granted in the original order would endanger the child's physical health or impair his emotional development. The court upheld the father's appellate contention that the mother had not met that burden of proof "in regard to restriction of his visitation privileges." *Shepherd* is inconsistent with *Winters*.

In *Wilhelmsen*, a decision of this district, the original decree granted the father "the right of reasonable visitation." The modified decree designated specific periods during which the father was entitled to temporary custody and also awarded him "reasonable visitation ... at all other times." This court cited *Weinbaum* for the principle that § 452.400.2 "was inapplicable to the change from reasonable visitation rights to the specific rights of temporary custody and visitation detailed in the modification." The court said that the amended decree did not impose a restriction on the father's decretal visitation rights and that no findings were required under § 452.-400.2.

In *Flaton*, the original decree granted the father "temporary custody and visitation" every weekend and every Wednesday. The order of modification reduced those rights to two weekends a month. On appeal, the father claimed that the reduction was ineffective because the trial court did not make expressly the findings required

by § 452.400.2 with respect to physical or emotional detriment to the children. Rejecting that argument, the court said that such a finding was implicit because the challenged order was issued in conjunction with an order granting permission to remove the children from the state. The court said that the action of the trial court in modifying his right to temporary custody from one day every weekend to two days every other weekend did not substantially decrease the amount of time the father would have with the children.

In *Wexelman,* the original decree gave the father "temporary custody" on alternating weekends, certain holidays, and for two weeks during the summer. The modification "curtailed" the father's custody to three hours per week *and required "monitored visitation."* The court said, at 75: "Section 452.400.2 RSMo 1986 provides that a court may modify a visitation order if it would serve the best interests of the child, but only if it finds the existing visitation would endanger the child's physical health or impair his emotional development." The court held that the modification was supported by the evidence.

The provisions of § 452.400.1 and .2 are based on, but not identical to, § 407 of the Uniform Marriage and Divorce Act. Section 407 of the Act reads:

> (a) A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral, or emotional health.

> (b) The court may modify an order granting or denying visitation rights whenever modification would serve the best interest of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral, or emotional health.

The Comment under § 407 of the Act reads, in pertinent part:

> With two important exceptions, this section states the traditional rule for visitation rights. The general rule implies a "best interest of the child" standard. . . . The section does make clear, however, that the judge must hold a hearing and make an extraordinary finding to deprive the noncustodial parent of all visitation rights. To preclude visitation completely, the judge must find that visitation would endanger "seriously the child's physical, mental, moral, or emotional health." These words are intended to mesh with other uniform legislation. See Uniform Juvenile Court Act, Section 47. Although the standard is necessarily somewhat vague, it was deliberately chosen to indicate its stringency when compared to the "best interest" standard traditionally applied to this problem. The special standard was chosen to prevent the denial of visitation to the noncustodial parent on the basis of moral judgments about parental behavior which have no relevance to the parent's interest in or capacity to maintain a close and benign relationship to the child. *The same onerous standard is applicable when the custodial parent tries to have the noncustodial parent's visitation privileges restricted or eliminated.* (Emphasis added.)

In *In re Marriage of Tisckos,* 161 Ill. App.3d 302, 112 Ill.Dec. 860, 866, 514 N.E.2d 523, 529 (1987), the court, construing an Illinois statute identical to § 407 of the Act, said:

> The word "restrict," given its ordinary and everyday meaning, indicates action to limit, restrain, or confine within bounds. . . . "Restrictions" have been found to include a prohibition of overnight visitation . . .; a requirement that visitation occur in the custodial parent's home, or outside the home of the noncustodial parent . . .; or the requirements that summertime visitation exclude overnight visitation and weekend visitation be supervised. . . . Only when there is such a restriction of visitation rights does the endangerment standard govern and mandate the requisite findings under that standard. (Citing Illinois authorities.)

Other decisions based on § 407 of the Act and generally consistent with the prop-

osition that the elimination of Mike's Tuesday–Thursday visitation was not a restriction of visitation so as to require application of the endangerment-impairment standard include: *In re Marriage of Solomon,* 84 Ill.App.3d 901, 40 Ill.Dec. 197, 202, 405 N.E.2d 1289, 1294[3] (1980); *Chance v. Chance,* 400 N.E.2d 1207, 1211 (Ind.App. 1980); *Milligan v. Milligan,* 365 N.E.2d 1244, 1246 (Ind.App.1977); *Lutzi v. Lutzi,* 485 N.W.2d 311, 315 (Minn.App.1992). Contra: *Danielson v. Danielson,* 393 N.W.2d 405, 407 (Minn.App.1986).

Section 452.400.1 imposes the endangerment-impairment standard with respect to a denial of reasonable visitation rights. There was no such denial here. Section 452.400.2, dealing with modifications of a visitation order, imposes the endangerment-impairment standard with respect to a restriction of visitation rights. The first sentence of § 452.400.2 indicates that not every modification constitutes a restriction. Otherwise, the sentence could read: "The court may modify an order granting or denying visitation rights whenever modification would serve the best interest of the child and it finds that the existing order endangers the child's physical health or impairs his emotional development."

This court holds that the instant modification was not a restriction within the meaning of § 452.400.2 and did not require a showing or a finding that Mike's Tuesday and Thursday visitation rights endangered the physical health of the children or impaired their emotional development. The modification was permissible if it would serve the best interests of the children. Where, as here, a multi-faceted visitation schedule is involved, to hold otherwise would make it almost impossible for the trial court to make an adjustment even when it is in the best interests of the children to do so. This court adopts the reasoning of *Winters.* To the extent that *Shepherd* conflicts with this holding, it should no longer be followed.

■ The challenged modification terminated Mike's Tuesday and Thursday visitation rights but did not disturb his other visitation rights. Mike had not exercised the terminated rights for several months. The exercise of them would have conflicted with activities of the children, and Mike agreed that those activities were important. Under the original decree the children, now in school, would not spend two consecutive nights in the same home during the school week. Mike has failed to show that the modification was not in the best interests of the children. The trial court's modification is supported by the record. Mike's first point has no merit.

Mike's second point is that the trial court erred in ordering an increase in child support because only a short time elapsed between the decree of dissolution and the filing of the motion to modify, and Brenda failed to plead or show an extraordinary change in circumstances which would justify the increase. Alternatively, Mike contends that Brenda's evidence showed that the needs of the children required less child support than the modified amount and, further, that the increase should not have been made retroactive to the date the motion to modify was filed.

Mike's second point must be considered in light of general principles, statutory and nonstatutory, pertaining to modification of a child support award. Section 452.370 reads, in pertinent part:

1. ... If the application of the guidelines and criteria set forth in supreme court rule 88.01 to the financial circumstances of the parties would result in a change of child support from the existing amount by twenty percent or more, then a prima facie showing has been made of a change of circumstances so substantial and continuing as to make the present terms unreasonable.

2. When the party seeking modification has met the burden of proof set forth in subsection 1 of this section, then the child support shall be determined in conformity with criteria set forth in supreme court rule 88.01.

In *Campbell v. Campbell,* 811 S.W.2d 504, 506 (Mo.App.1991), the court said:

The mother made out a *prima facie* case of change of circumstances by showing that the existing child support

award was less, by twenty percent or more, than the guideline given in Rule 88.01. That showing by the wife met her burden of proof on the issue of change of circumstances "so substantial and continuing" as to make the present award unreasonable. § 452.370.1, .2. That element of the modification action conclusively proven, the statute directed that the child support element of the action *"shall* be determined" under Rule 88.01. § 452.370.1 (emphasis added). The effect of subsection 2 of § 452.370 is that a party who has proven changed circumstances, is entitled to a new award of child support calculated according to the criteria of Rule 88.01 and Form 14, unless the court determines by the substantive factors that govern such adjudications that the amount calculated is unjust or inappropriate.

In *Rothfuss v. Whalen,* 812 S.W.2d 232, 237 (Mo.App.1991), the court said:

Although use of the guidelines is mandatory, a wide discretion is vested in the trial court with respect to the granting of child support, and that discretion is expressly retained under § 452.340.8. Nevertheless, the guidelines should be "accorded substantial consideration in determining and reviewing child support awards"; the only requirement is that they not be "rigidly or automatically" applied. (Authorities omitted.)

In *Cash v. Cash,* 812 S.W.2d 265, 266 (Mo.App.1991), the court said:

If the court awards child support in accordance with [Rule 88.01] and Civil Procedure Form 14 he is not required to justify his use of the same by record findings. If he deviates from the formula, the presumption of correctness of the formula is rebutted if the court "enters in the case a written finding or a specific finding on the record that the amount so calculated, after consideration of all relevant factors, is unjust or inappropriate." Rule 88.01(e). Appellant's argument that the court erred by following the formula without justifying it by record findings is therefore the exact reverse of the applicable rule.

In *Hamilton v. Hamilton,* 817 S.W.2d 937, 940 (Mo.App.1991), the court said:

The relevant factors are listed in Rule 88.01(a)–(e). These factors include the financial resources and needs of the child, the financial resources and needs of the parents, the standard of living the child would have enjoyed if the marriage had not been dissolved, the physical and emotional needs of the child, and the educational needs of the child. It is apparent that the party against whom the presumption operates must adduce evidence to show that application of the relevant factors supports a finding that Form 14 should not be used. The standard of review for determining whether or not evidence has been introduced which would rebut the presumption is that stated in *Murphy v. Carron,* 536 S.W.2d 30, 32[1–3] (Mo. banc 1976).

As reported in the third paragraph of this opinion, the dissolution decree ordered Mike to pay Brenda child support of $120 per month per child. The instant order raises it to $288.41 per month per child, retroactive to the date Brenda's motion to modify was served on Mike.

■ Mike concedes the trial court's calculation of the latter amount was based on Brenda's Form No. 14 (Exhibit 8), filed per Rule 88.01. Mike's only objection to Exhibit 8 was, "[I]t's not presented in a timely fashion." The objection was overruled and has not been preserved.

Exhibit 8 shows Mike's monthly adjusted gross income for child support purposes (line 3) is $3,150.92. Although Mike challenges this figure, there was testimony by Brenda, received without objection, supporting it.

Brenda is employed by a school district. Her monthly gross income is $2,083.59. However, on line 1 of Exhibit 8 Brenda showed her monthly gross income as $2,989.59. She showed the same amount as her monthly adjusted gross income for child support purposes (line 3, Exhibit 8). The record demonstrates this $2,989.59 includes $906 of Social Security benefits. Brenda's testimony about the benefits was:

Q. ... what financial resources do your children ... have over and above the child support amount [Mike] pays?

A. They receive social security survivors' benefits from my deceased husband.

Q. Okay. Could you explain that a little bit?

A. They receive $900 and some a month from [my deceased husband's] social security insurance.... It comes to them.

Q. Did you make application for these benefits on their behalf?

A. Yes, I did.

Brenda evidently included the $906 Social Security benefits in her monthly gross income because of the "Directions for Use" which follow Form No. 14. They state, in pertinent part:

Gross income includes income from any source ... and includes but is not limited to income from ... social security benefits....

The sum of the two amounts on line 3 of Exhibit 8 (Brenda's $2,989.59 and Mike's $3,150.92) is $6,140.51. Using the "Schedule of Basic Child Support Obligations" following Form No. 14, Brenda calculated a monthly child support obligation for the two children, in the aggregate, of $1,101 (line 4.a., Exhibit 8). To this, she added $30 for her monthly work-related child care cost (line 4.b., Exhibit 8), producing "combined child support costs" of $1,131 (line 5, Exhibit 8).

She then calculated each parent's proportionate share of the combined adjusted gross income for child support purposes (line 3, Exhibit 8). Her arithmetic showed her share as 49 percent and Mike's as 51 percent.

She then multiplied the combined child support costs, $1,131 (line 5, Exhibit 8), by 51 percent to determine Mike's child support obligation. The result was $576.81. The trial court adopted that figure in raising Mike's child support to $288.41 per month per child.

We hold Brenda was wrong in including the $906 Social Security benefits in her monthly gross income. While the "Directions for Use" (quoted earlier) state gross income includes income from social security benefits, we hold this means only social security benefits to which a parent is entitled in his or her own right, not social security benefits which are the entitlement of children whose support is to be determined under Rule 88.01 and Form No. 14.

In *Wilk v. Wilk*, 781 S.W.2d 217 (Mo. App.1989), the wife had custody of the parties' three children at the time the dissolution case was tried. She was receiving social security benefits of $260 per month for them, based upon the husband's disability. The Eastern District of this Court held:

Such disability benefits are the property of neither the husband nor the wife and are not part of the marital estate. 42 U.S.C. § 402 et seq. (1989). While not marital property, the children's benefits should be considered in the determination of support payments.

781 S.W.2d at 223[12].

By the same logic, the Social Security benefits in the instant case are the entitlement of the children as the result of the death of their stepfather (Brenda's deceased husband). The benefits are not Brenda's entitlement. Consequently, they should not have been included in her monthly gross income for purposes of Rule 88.01 and Form No. 14. Their inclusion in Brenda's income distorted the calculation of Mike's presumed child support amount.

This is illustrated by deleting the $906 from Brenda's gross income and recalculating the child support per Form No. 14.

Excluding the $906, Brenda's monthly gross income (line 1) and monthly adjusted gross income for child support purposes (line 3) is $2,083.59. This reduces the total monthly adjusted gross income for child support purposes (line 3) from $6,140.51 to $5,234.51. This, in turn, reduces the monthly child support obligation for the two children, in the aggregate, to $983 (line 4.a.). Adding Brenda's monthly work-related child care cost of $30 (line 4.b.) produces "combined child support costs" of $1,013 (line 5).

The reduction of Brenda's monthly gross income for child support purposes (line 3) also changes her and Mike's proportionate shares of the combined adjusted gross income for child support purposes. Brenda's proportionate share becomes 40 percent and Mike's becomes 60 percent. Mike's child support obligation (60 percent of the combined child support costs of $1,013) becomes $607.80. Brenda's child support obligation becomes $405.20.

If Mike's child support obligation were increased to $607.80, there would theoretically be $1,919 available each month to meet the children's needs: $607.80 from Mike, $405.20 from Brenda, and $906 from Social Security.

Raising Mike's child support obligation from $120 per month per child (the amount in the dissolution decree) to $288.41 per month per child (the amount in the instant order) provides $576.82 per month from him. This, coupled with the $906 Social Security benefits, makes $1,482.82 per month for the children, which exceeds the combined child support costs of $1,013 (computed above) by $469.82, without even considering Brenda's responsibility to bear part of the child support obligation. Her part of that obligation (computed above) is $405.20. Adding that to the $1,482.82 produces $1,888.02.

The trial court, in raising Mike's child support obligation, found that the application of the guidelines and criteria in Rule 88.01 to the financial circumstances of the parties would result in a change of child support from the amount in the dissolution decree by more than 20 percent, thereby making a prima facie showing that there had been a change of circumstances so substantial and continuing as to make the child support award in the dissolution decree unreasonable. § 452.370.1 (quoted earlier). The trial court then calculated Mike's "presumed child support amount" per Form No. 14 (Exhibit 8) as explained earlier.

One of the factors a court must consider in determining the amount of child support is the financial resources of the child. Rule 88.01(a). Here, the children have a substantial financial resource—$906 per month Social Security benefits. Those benefits, together with the child support award in the dissolution decree ($120 per month per child) amount to $1,146 per month, $15 more than the combined child support costs calculated by the trial court ($1,131) and $133 more than the combined child support costs calculated when the $906 Social Security benefits are deleted from Brenda's monthly adjusted gross income for child support purposes.

■ Thus, under either computation the child support required of Mike by the dissolution decree plus the monthly $906 Social Security benefits provide more funds than the combined child support costs calculated per Rule 88.01 and Form No. 14 (line 5).

Given these unique circumstances, we hold the trial court should not have relied exclusively on the rebuttable presumption that the child support calculated per Form No. 14 was the proper amount to award.

As Mike points out, Brenda's motion to modify prayed the child support be raised to $225 per month per child. This totals $450 per month, $126.82 less than the increase ordered by the trial court.

In *Harding v. Harding*, 826 S.W.2d 404 (Mo.App.1992), an appeal by a father from a dissolution decree, the Western District of this Court held that when a custodial parent presents evidence that the children's financial needs are lower than the presumed child support amount calculated per Form No. 14, the rebuttable presumption created by Rule 88.01 is rebutted and the child support must be determined from the evidence as if no presumption had ever existed. 826 S.W.2d at 407[5–7].

Here, Mike contends Brenda's evidence showed the monthly expenses attributable exclusively to the children total $858, $273 lower than the combined child support costs of $1,131 calculated by the trial court per Form No. 14. While Mike's argument is supported by the record, it fails to recognize other expenses of Brenda such as housing, utilities and car expense, portions of which are arguably attributable to the children.

Because (1) the $906 Social Security benefits were erroneously included in Brenda's monthly gross income for child support purposes in the calculation under Form No. 14, (2) the $906 coupled with the child support of $120 per month per child awarded in the dissolution decree provides more money for the children than the combined child support costs calculated per Form No. 14—either by including or excluding the $906 from Brenda's monthly adjusted gross income for child support purposes, (3) Brenda's motion to modify prayed for less child support than the amount ordered by the trial court in the instant order, and (4) Brenda's evidence arguably showed the monthly expenses attributable to the children are lower than the amount computed per Form No. 14, we hold the trial court erred in relying on the rebuttable presumption in Rule 88.01. The above factors, in the aggregate, rebutted the presumption.

That being so, whether the child support in the dissolution decree should be raised should have been determined by the standards set forth in the first two sentences of § 452.370.1, that is, by determining whether there had been a showing of changed circumstances since the dissolution decree so substantial and continuing as to make the child support award in that decree unreasonable. Application of this standard requires weighing evidence and determining its credibility, a task for the trial court, not us.

The order appealed from is affirmed except that portion which increases the child support. That portion of the order is reversed and the cause is remanded to the trial court for redetermination of the child support issue in accordance with this opinion.

PARRISH, C.J., concurs in part and dissents in part in separate opinion filed.

FLANIGAN, J., concurs in part and dissents in part in separate opinion filed.

PREWITT, J., concurs in separate opinion filed by FLANIGAN, J.

PARRISH, Chief Judge, concurring in part and dissenting in part.

I concur in the principal opinion with respect to the issue of child visitation (Point I). I concur in part and dissent in part with respect to the child support issue (Point II).

I agree with the principal opinion's analysis of the nature of the social security benefits that were available as a result of the death of the children's stepfather; they are entitlements of the children. As such they should not have been included in the calculation of Brenda's monthly gross income for purposes of Civil Procedure Form No. 14 for purposes of Rule 88.01.

My disagreement with the treatment of this issue in the principal opinion is directed to the remand of the case to the trial court "for redetermination of the child support issue." To remand the case for that purpose, in my opinion, unnecessarily subjects the parties to delay in obtaining a final resolution of this case, as well as to possible additional expenses for additional litigation. This court is permitted, on appeal, to "give such judgment as the [trial] court ought to give." Rule 84.14.

In the interest of laying this litigation to rest and settling the rights of the parties, we should, if possible enter such judgment as the trial court should have entered.

*Oldfield v. Oldfield,* 688 S.W.2d 778, 781 (Mo.App.1985).

The evidence before the trial court was that the "combined child support costs" for the two children was $1,131. The original decree in the dissolution of marriage case ordered Mike to pay $240 per month, being $120 per month for each of the two children of the parties. There is now $906 per month available for purposes of meeting the needs of the children due to social security entitlements that are payable by reason of the death of the children's stepfather. Thus, Brenda is receiving $240 per month from Mike and $906 as a result of the children's social security entitlements, a total of $1,146 per month. The children have no financial needs that are not being met.

Rule 88.01 (and § 452.340.8, RSMo Supp. 1992) permits a trial judge to award an amount of child support other than the amount calculated pursuant to Civil Procedure Form No. 14 upon it "enter[ing] in the case a written finding or a specific finding on the record that the amount so calculated, after consideration of all relevant factors, is unjust or inappropriate." Rule 88.-01(e).

In my opinion, the trial court in this case abused its discretion by failing to enter a specific finding that the amount of child support calculated pursuant to Civil Procedure Form No. 14, after consideration of all relevant factors, is inappropriate. Since the record on appeal reveals that the financial needs of the children are being met, I perceive no issue that requires the trial court to weigh the evidence or to assess the credibility of any witness. I see no need to remand the case for redetermination of an appropriate amount of child support. I would reverse that part of the order that modified the amount of child support that Mike was originally ordered to pay. I would deny Brenda's request for an increase in the amount of child support. I would modify the order entered in the trial court by including in that order the finding that the amount of child support calculated pursuant to Civil Procedure Form No. 14, after consideration of all relevant factors, including those set out in § 452.340.1, RSMo Supp.1992, is inappropriate.

FLANIGAN, Judge, concurring in part and dissenting in part.

I concur in the principal opinion with respect to the issue of child visitation (Point I). With respect to the child support issue (Point II), I concur in part and dissent in part and, in so doing, I concur fully in the opinion of Chief Judge Parrish.