**L. L. T., Respondent,**

v.

**P. A. T., Appellant.**

**No. WD 30321.**

Missouri Court of Appeals, Western District.

June 29, 1979.

William D. Adkins, Liberty, for appellant.

Timothy H. Bosler, Martin M. Montemore, Liberty, for respondent.

Before SOMERVILLE, P. J., and PRITCHARD and MANFORD, JJ.

PRITCHARD, Judge.

Upon modification of a dissolution of marriage decree proceeding, the trial court terminated appellant's visitation rights with his infant daughter. Appellant first asserts that there was insufficient evidence to support the order. He contends that there was no evidence to establish that a "certain condition" of the child (after she was returned to respondent) was caused by him or that the presence of that condition showed that continued visitation rights would endanger the physical and emotional health of the child; and that there was no evidence to establish that he had an uncontrollable temper as would work a substantial change in the condition of the parties which would support a modification of the decree to serve the best interests of the child.

Appellant was granted visitation rights by the decree, which was entered September 6, 1977, for "The first and third Saturday of every month, along with a member of my family." According to the original petition, the child was born August 6, 1976. Respondent's petition to modify the decree was filed December 14, 1977, and alleged that appellant "has continually physically and mentally abused said child." By amendment, she asked for attorney's fees.

Respondent testified that appellant picked up the child about 9:30 in the morning of December 3, 1977. She bathed the child that morning and had an opportunity to examine her. She did not notice "any irregularities wrong with the child." The

child was returned to her about 5:30 p. m. A little after 10:00 that evening the child "seemed awfully rambunctious and fussy." Respondent played with her awhile, and when she got sleepy, she went in to get her ready for bed. As respondent was applying baby cream she noticed that the child's anal area was awfully reddened, and an opening was enlarged there. Because it was unusual and she had never seen it on the child, respondent called her mother in. She then called her family doctor who suggested that she take her to Osteopathic Hospital to see what was wrong, but that pictures should be taken. The picture taken was before the trial court but has not been filed in this court. On arrival at Osteopathic Hospital, respondent was referred to Children's Mercy Hospital where the child was examined by Dr. Gail M. Zank at 2:30 a. m., on December 4, 1977. Dr. Zank found some "perirectal redness—erythema, about a half a centimeter in circumference." There was no bleeding or tearing of the anal area, and there was nothing she noticed that indicated penetration. A cultural sperm test was made and there was no sperm seed on the wet mount. There was nothing to indicate sexual molestation. The area of redness was compatible with penetration, but there was no way of knowing for sure—it could have been another cause altogether such as pinworms, a firm stool or constipation. No treatment was indicated.

Appellant testified that he realized he had been charged with physically and mentally abusing the minor child, but denied that he had ever done so. He admitted that he was undergoing counselling at the time of trial, and had been doing so since September, 1977, once a week. "Q And what prompted you to go to this counselling? A The Judge ordered me to go to a counselor, or some kind of help, to get rid of my temper. Q To get rid of your temper? A Yeah. Q And when did this occur? When did this order come down? A September 6th."

The trial court made this finding: "The Court finds that the evidence adduced in this cause proved a substantial change in the condition of the parties with respect to

visitation of the infant child, H. L. T., in that Respondent (appellant here) has been shown to manifest an uncontrollable temper coupled with emotional problems for which he has been receiving treatment, and that said infant, H. L. T., while in his temporary care, obtained a certain physical condition as shown by the evidence, and that further visitation would endanger the physical health and impair the emotional development of said child." Appellant's visitation rights as set forth in the original judgment were ordered terminated.

■ The parties appeared to be confused as to whether the court's order had to do with a change of circumstances since the original decree, as required for a *custody* change order under § 452.410, RSMo 1978, or whether it had to do only with a restriction of visitation rights which requires only a finding under § 452.400 that visitation would endanger the child's physical health or impair its emotional development. Although the court alluded to changed conditions, the order clearly had reference only to a restriction of visitation rights under § 452.400. The original order of custody to respondent was not disturbed. In this connection appellant's Point IV complains of the court's receipt into evidence the testimony of S. L. which related to prior homosexual activities of appellant with that young boy. Appellant says that this could not be considered under § 452.410 because the facts elicited were known to the court at the original trial, and thus could not be a changed circumstance. The trial court here was not that which heard the original trial. It was certainly competent for the court to consider this evidence of appellant's prior conduct as it might bear upon his emotional stability and which in turn would bear upon the well-being of the child under § 452.400.

■ The sexual molestation of the child by appellant was not proved with certainty. All the other facts bearing upon the issue of visitation were proved by substantial evidence: Appellant admitted he was undergoing counselling for a bad temper which must have existed to the extent to require

counselling, hence the court's terminology, "uncontrollable temper"; the child was delivered to appellant in good condition on the day of visitation, but was returned in a different physical condition which the trial court could have found, at least, did not show she had received the best of care during the time appellant had her, and the child was rambunctious, and as respondent further testified, the child appeared to be unusually fussy or upset when appellant brought her back and the properly considered fact of appellant's prior homosexual activities as showing his emotional stability; and these facts support the trial court's finding and conclusion that further visitation would endanger the physical health and impair the emotional development of the child in her best interests. See *Gayman v. Gayman*, 559 S.W.2d 617, 618 (Mo.App. 1977), holding that deference should be given to the trial court's assessment of what serves the best interest of the child in matters pertaining to visitation rights, and the judgment should be affirmed on appeal unless it lacks substantial evidence to support it, or is against the weight of the evidence, or erroneously declares or applies the law. See also *Langwell v. Langwell*, 559 S.W.2d 65, 66[2] (Mo.App.1977), and the there cited case of *Roark v. Harvey*, 544 S.W.2d 287, 292[5] (Mo.App.1976), holding to the effect that a determination of visitation rights will not be overturned unless the *appellant* demonstrates that the order was not in the best interests of the child. After a complete review of the transcript on appeal, and a consideration of all of the testimony presented on appellant's behalf, including his own, there is nothing to indicate that the trial court's order was not in the best interests of the child.

■ Appellant contends that the court failed to make findings of fact and conclusions of law in accordance with his request. That request was made about a month after the case was submitted to the court, although the briefs of the parties were filed during that period. Rule 73.01(b) requires that the request be made before final submission of the case. Here it obviously came too late, even assuming that the above recited findings were insufficient. *McNeill v. McNeill*, 456 S.W.2d 800, 808[9, 10] (Mo.App. 1970). The point is overruled.

■ The trial court awarded respondent $400.00 attorney fees upon a finding that appellant was an able-bodied man and was employed, and respondent was unemployed. That finding is not supported in the record, nor is there any evidence, as required by § 452.355 that the court consider all relevant factors including the financial resources of all parties in awarding attorney fees. There was no evidence of the appellant's ability to pay, nor of the wife's need, or inability to pay her own attorney fees. See *Rissler v. Rissler*, 541 S.W.2d 64 (Mo. App.1976).

The judgment is affirmed except for that part awarding attorney fees, and as to that issue, the case is remanded for further proceedings.

All concur.