Harvey G. **KEITH**,
Petitioner-Respondent,

v.

Carolyne I. **KEITH**,
Respondent-Appellant.

No. 14155.

Missouri Court of Appeals,
Southern District,
Division One.

April 7, 1986.

Thomas P. Klinginsmith, Carthage, for respondent-appellant.

No appearance for petitioner-respondent.

FLANIGAN, Judge.

■ Appellant Carolyne Keith appeals from an order of the trial court, entered January 18, 1985, denying her motion, filed June 8, 1984, to modify the visitation provi-sions of an order entered January 13, 1984. The following events are significant:

November 14, 1980—A decree was entered dissolving the marriage of Harvey Keith and Carolyne Keith and awarding to Harvey the custody of their four minor children, Lisa, Byron, Tanya and Michael. Carolyne was awarded "the right to reasonable visitation."

Order of September 8, 1981—"[Carolyne's] right to reasonable visitation with Lisa, Byron and Tanya shall be exercised from 9:00 a.m. to 12:00 noon on the Saturdays [Carolyne] has custody of Michael."

Order of May 18, 1982—granted Harvey the "exclusive care, custody and control" of the four minor children "without any interference on the part of [Carolyne] and without any rights of visitation by [Carolyne]." This order contained a finding "that visitation with the children by [Carolyne] would impair their emotional development."

Order of January 13, 1984—affirmed the prior denial to Carolyne of all visitation rights with respect to Tanya (and the two older children) and permitted Carolyne to visit Michael on alternate weekends from 7:00 p.m. Friday to 6:00 p.m. Saturday and, during the summer, for 2½ hours each Wednesday evening. Carolyne was also given visitation rights with respect to Michael on four designated holidays.

June 8, 1984—Carolyne filed a motion to modify the order of January 13, 1984. This motion requested an order "establishing visitation times with Tanya and Michael." The motion also requested, with respect to Tanya, that the court "establish initial counseling sessions with a licensed clinical psychologist or a party with equivalent qualifications."

The grounds set forth in the motion, allegedly constituting a change in conditions since the entry of order of January 13, 1984, included the following: Carolyne has visited Michael at specified limited times and the visits have benefited Michael's development; Harvey has re-

taliated against Michael through emotional tactics aimed at disrupting Carolyne's visitation with Michael; Carolyne has altered her attitude toward "the children" since the hearing in which Carolyne's visitation rights were terminated; increased visitation with Michael and Tanya "is now imperative for their proper development."

On January 18, 1985, the trial court, after evidentiary hearing, denied Carolyne's motion of June 8, 1984.

Carolyne is the only party to file a brief in this court. Carolyne's first point is that the trial court erred in not granting her visitation rights with respect to Tanya (and in refusing to modify the order of January 13, 1984), for the reason that "a change of circumstances had occurred and modification would serve the best interest of Tanya."

Section 452.400[1] reads, in pertinent part:

"1. A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger the child's physical health or impair his emotional development.

2. The court may modify an order granting or denying visitation rights whenever modification would serve the best interest of the child, but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger the child's physical health or impair his emotional development."

Appellate review of the order of January 18, 1985, is governed by the standards set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). See *Blankenship v. Blankenship*, 699 S.W.2d 44, 45[1] (Mo.

App.1985). In matters pertaining to visitation rights, this court should accord due deference to the trial court's assessment of what serves the best interests of the child and the judgment should be affirmed unless it lacks substantial evidence to support it, or is against the weight of the evidence, or erroneously declares or applies the law. *L.L.T. v. P.A.T.*, 585 S.W.2d 157, 160 (Mo. App.1979). A determination of visitation rights will not be overturned unless the appellant demonstrates that the order was not in the best interests of the child. *L.L.T. v. P.A.T.*, supra, at 160. See also *Langwell v. Langwell*, 559 S.W.2d 65, 66[2] (Mo.App.1977); *Roark v. Harvey*, 544 S.W.2d 287, 292[5] (Mo.App.1976).

Courts should encourage the continued love, interest and affection of divorced parents for their children, and where both parties are proper parents, each has a right to reasonable access to the children. *Geary v. Geary*, 697 S.W.2d 318, 320[1] (Mo.App.1985). Visitation rights are not meted out with the purpose of rewarding one parent or punishing another parent. *Alice v. Ronald*, 683 S.W.2d 307, 310[7] (Mo.App.1984).

The factors enumerated in § 452.375,[2] although dealing with custody, are among the ones which the trial court may consider in determining whether there should be a change in visitation rights. *Leimer v. Leimer*, 670 S.W.2d 571, 573 (Mo.App.1984). Overnight visits may be a part of "reasonable visitation rights" within the meaning of § 452.400, *Hamilton v. Hamilton*, 622 S.W.2d 252 (Mo.App.1981); *Barry v. Barrale*, 598 S.W.2d 574 (Mo.App. 1980), and thus not governed by the provisions of § 452.410 which require certain proof before "a prior custody decree" is

1. All references to statutes are to RSMo 1978, V.A.M.S.

2. "452.375. Factors to be used in determining custody of child.—The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including:
    (1) The wishes of the child's parents as to his custody;

(2) The wishes of a child as to his custodian;
    (3) The interaction and interrelationship of the child with his parents, his siblings, and any other person who may significantly affect the child's best interests;
    (4) The child's adjustment to his home, school, and community; and
    (5) The mental and physical health of all individuals involved."

modified. *Blankenship v. Blankenship,* supra, at 45[1].

█ Evidence of a parent's prior conduct may properly be considered, under § 452.-400, as bearing on the issues of the parent's emotional stability and its possible effect upon the well-being of the child. *L.L.T. v. P.A.T.,* supra, at 159[1]. The trial court may believe all, part or none of the testimony of a witness. *Blankenship v. Blankenship,* supra; *Alice v. Ronald,* supra, at 310[6].

In January 1985, when the instant motion was tried, Lisa was 19, Byron was 18, Tanya was 15 and Michael was 8. When the original decree was entered in 1980, Harvey was granted custody of all four children. Since that time Carolyne has filed four motions to modify. Harvey has filed one motion to modify and two cross-motions. Only the record of the most recent proceeding is before this court. There is no showing of the events which led up to the original decree placing sole custody in Harvey, or the events which led up to the order of May 18, 1982, (affirmed by the order of January 13, 1984), which denied Carolyne all rights of visitation with respect to Tanya (and the other children). It is obvious, however, that the relationship between Carolyne and the three older children is most strained and perhaps bitter.

Carolyne testified that she had no "contact of any kind" with Tanya since February 1984, and very little contact with Tanya since the "modification which caused me to lose visitation rights." At the latest hearing, Carolyne said she saw Tanya and did not recognize her. Carolyne also said: "I do not have any kind of relationship with Lisa or Byron. I have no communication with Byron, Lisa or Tanya. With regard to Tanya, I request some type of intermediary visitation. I think it would be necessary to begin with because I do not think Tanya understands the situation. I suggest a licensed clinical psychologist might be the one most qualified to serve as intermediary."

All the parties live in Carthage and Carolyne's home is two or three miles from the home where Harvey and the children live. Although Carolyne picks up Michael on a weekly basis, Carolyne said: "I have never seen Tanya when I have picked up Michael. Tanya is in the ninth grade at junior high. I have heard that she is a flag girl and is in the band. I do not know whether she is a cheerleader. I have not attended lately any activities where Tanya was performing. I did not give Tanya a birthday present this year or a Christmas present. When my visitation rights were terminated I was deeply hurt when my children lied to the court about me. I have forgiven them and I love them and I hold no grudges although I am deeply hurt. I feel I am now in control of my emotions and my feelings toward them are more understanding."

Herndon Snider, a clinical psychologist, testified that he was willing to participate in "some form of supervised visitation" between Tanya and Carolyne. He also testified that he had seen "increased stability on the part of Carolyne between first seeing her in 1983 until now."

Testifying in opposition to Carolyne's motion, Harvey stated that he had no objection to any of the children talking with Carolyne and that he did not try to monitor their telephone calls. He said that Carolyne had not made any attempt to contact him about Tanya. He said that Tanya had answered the telephone several times when Carolyne called and Carolyne made no effort to talk to Tanya. He said there had been no "personal contact" between Tanya and Carolyne in the last two years.

Lisa, testifying in opposition to Carolyne's motion, said: "I am close to Tanya. I think Tanya could visit [Carolyne] now if she wanted to. I don't think [Harvey] would prohibit Tanya from seeing [Carolyne]. Tanya could telephone her mother. As result of the dissolution the family more or less divorced [Carolyne].... We all asked if we could go with our father."

At the request of Carolyne's counsel, the court interviewed Tanya in chambers. Tanya testified: "I am in the ninth grade

and I am doing pretty well in school. I do not have any idea when is the last time I had any contact with my mom. I have seen her around but she never tries to talk with me. She has not called me. She could have talked to me when she called. She calls for Dad and I answer the phone and she says she wants to talk to Dad. She has a chance right there to talk to me but never makes any effort. Since February 1984 I have not seen her except just on the street. I am always home when she comes to pick up Mike but I never answer the door. I do not want to visit with her because of everything that has happened in the past. I don't have any reason for seeing her and do not feel it is necessary because I am living all right now—going back and all that might just cause more problems."

Tanya further testified: "Mother has testified that her attitude has changed and she really wants to see me. She has been saying that for the last few years but she has not tried. I don't want to see her but if I wanted to I could because Dad does not interfere. I do not want to visit her with a psychologist. I don't like the way she keeps harassing us, bringing us back to court. Seems like she thinks this is just provoking us because it doesn't help much. It just makes matters worse. I don't consider I have a mother because of everything. She has never given me anything for my birthday or Christmas. In order for me to want to see my mom, for starters I think she ought to let us have peace. I don't think I will ever want to see her. The wound is too deep. A person can stand only so much. I don't know if I will want to see her 10 years from now."

The foregoing evidence, viewed in its entirety, presents a sad situation. On May 18, 1982, Carolyne was denied visitation with Tanya on an express finding that visitation would impair Tanya's emotional development. On January 13, 1984, another hearing was held with the same result. The order of January 18, 1985, contained an express finding "that there has not been a substantial or continuing change of cir-

cumstances since the [order of January 13, 1984] to warrant further modification."

This court concludes that the trial court properly could have found, as it did find, that it was not in the best interests of Tanya to grant Carolyne the modification requested by the motion. Carolyne's first point has no merit.

■ Carolyne's second point is that the trial court erred in not modifying the order of January 13, 1984, by increasing her visitation rights with respect to Michael. Carolyne's brief requests that the visitation with Michael be increased to "every other weekend from Friday evenings to Sunday evenings and for such other times as are deemed appropriate." Carolyne's motion requested that relief, plus custody for one summer month.

Much of the evidence previously discussed is material here. Carolyne's relationship with Michael is better than her relationship with Tanya and the other children. Carolyne testified that when Michael is with her they go swimming, play tennis, play pool, go to the movies, play in the park, go skating, go shopping, and make cookies. She said she has no disciplinary trouble with Michael. "It's a pretty good mother-son relationship."

Carolyne has a large house and when Michael stays with her he has his own bed.

On cross-examination Carolyne testified that Michael is a very bright boy, that his social attitudes are "all very satisfactory," and that she would not be surprised if his work habits are all satisfactory and if he has perfect attendance at school. Carolyne also said: "I do not know why my children are afraid of me.... all of my children hang up on me. I don't know why."

Harvey, testifying in opposition to the motion, said: "Michael tells me he is not happy to be around his mother." He also testified: "When Michael comes home after visiting Carolyne he says, 'Daddy, will you hold me,' so I rock him for a while."

Lisa, testifying in opposition to the motion, said: "When Michael comes home from visiting his mother he is kind of de-

355

pressed. He says he doesn't have anyone to play with. At home he can play with us. I think he is kind of bored. At the present time Mother has Michael Friday to 6 on Saturday. If that were extended I think it would cause problems." The latter comment was a reference to the fact that Harvey and the four children attend church on Sunday. Carolyne attends a different church.

At the request of Carolyne's counsel, the trial court conferred with Michael in chambers. Under questioning by the court Michael testified: "Mother picks me up on Friday. I don't like going over there very much—nothing to play with over there. So far as I know there are no kids my age anywhere near where Mother lives. I don't know anybody over there. When I am over there I mostly just play with my soccer ball."

Michael testified that he enjoyed swimming with his mother and going shopping with her and going to a pizza store with her. Michael also said: "The other reason why I don't like to go over there is it's just boring I guess. With regard to whether I get along all right with my mom, a little ... I would not like to spend more time with Mom if I had something to do over there. I cannot give you a reason why I don't want to go over there. It's hard to explain, really hard. I don't want to let my mother keep me on Sunday. I don't want to spend a week or two with her in the summer. Dad has not told me anything about my mom since I have been living with my dad. We don't like to talk about her—me and Dad and all the family."

Carolyne's situation is a sad one. The extent to which it may have been of her own making is not shown by the instant record. This court cannot convict the trial court of error in finding, as it did, that increasing the visitation rights of Carolyne with respect to Michael would not serve his best interests. As the court stated in *Langwell v. Langwell,* 559 S.W.2d at 67, "It is evident that the court considered that however far from ideal the present ... visitation, any other arrangement was an

experiment not yet to be risked." Carolyne's second point has no merit.

The judgment rests on substantial evidence and is affirmed.

TITUS, P.J., and GREENE, J., concur.