Larry Thomas JAMES, Appellant,

v.

Sandra Marie JAMES, Respondent.

No. 18304.

Missouri Court of Appeals,
Southern District,
Division One.

May 17, 1993.

George A. Shaffer, Buffalo, for appellant.

No appearance for respondent.

PARRISH, Chief Judge.

Larry James appeals from an order that modified a decree of dissolution of marriage with respect to child visitation rights. This court affirms.

The marriage of Larry James and Sandra James (now Sandra McFarland) was dissolved by a decree of dissolution of marriage entered by the Circuit Court of Dallas County, Missouri, on January 10, 1991. The parties had three children. They were awarded joint legal custody of the children. *See* § 452.374.1.[1] Larry was awarded physical custody. Sandra was allowed "lib-

eral visitation" with the children "consistent with at least the visitation set forth in the Decree."[2] The "liberal visitation" rights apparently were intended to be the reasonable visitation to which Sandra was entitled, as a noncustodial parent, by reason of § 452.400.1.

Sandra resided in California prior to the dissolution of her marriage to Larry. She had intended to move back to Missouri after the dissolution. She was unemployed. She explained what happened regarding her plans.

> At the time I came to court I was unemployed, and I had agreed to move back to the State of Missouri.

.    .    .    .    .

> I obtained a job [in California] in March because my child support started in March; and I was not financially able to move from the State of California to Missouri.

Sandra did not see her children from January 1991, when the marriage was dissolved, until June 1992, when she was present for the court hearing on her motion to modify the dissolution decree. She had attempted to reach an agreement with Larry in the summer of 1991 which would have permitted her "to have [her] weeks during the summer consecutively" so she could have taken them to California "for one period of time." Although Larry was willing for her to have the children for two weeks, no agreement was reached.

Sandra testified that she had remarried. She described the facilities available for the children at her home in California and her employment there. The trial court modified the visitation schedule. It granted Sandra visitation "from one (1) week after school dismisses for summer vacation until one (1) week before classes resume and during Christmas break from school on odd

---

1. References to statutes are to RSMo Supp.1990 unless stated otherwise.

2. The legal file does not contain a copy of the decree of dissolution of marriage that Sandra sought to modify. She characterized her visita-

tion rights as quoted in the opinion text. That characterization was not corrected or refuted by Larry. The record on appeal does not identify specific visitation that was to have sufficed as "liberal visitation."

numbered years." [3] Larry appeals from that order. Other procedural facts will be set forth in later parts of this opinion.

■ Larry's first point on appeal contends that the trial court erred in changing the visitation rights that were granted by the original decree because Sandra "presented no evidence by which the court could find, upon the basis of facts that had arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change had occurred in the circumstances of the children or their custodian ... and that the modification was necessary to serve the best interests of the children."

In asserting that there was no showing of a significant change of circumstances with respect to the children and him, as their custodian, Larry relies on § 452.410, RSMo Supp.1991, and on *Burden v. Burden*, 811 S.W.2d 818 (Mo.App.1991), and *Pulliam v. Sutton*, 728 S.W.2d 252 (Mo. App.1987). However, Larry, the appellant before this court,[4] has not discussed § 452.-400.2, RSMo Supp.1991. It states, as is pertinent here:

> The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child, ....

This court is mindful of the direction given by § 1.090, RSMo 1986, that "[w]ords and phrases shall be taken in their plain or ordinary and usual sense." Section 452.-400.2, RSMo Supp.1991, the provision that relates to visitation rights by noncustodial parents, requires modification based upon "the best interests of the child." There is no reference to changed circumstances of the child or custodial parent in the language of that statute as there is in the language of the statutes that relate to modification of custody, § 452.410, RSMo Supp.1991, or to modification of maintenance or support, § 452.370.1, RSMo Supp. 1991.

Likewise, *Burden v. Burden, supra,* the first case upon which Larry relies with respect to Point I, was a modification of custody case, not a modification of visitation case. 811 S.W.2d at 820. The applicable statute in *Burden* was § 452.410, not § 452.400, the applicable statute here.

The second case upon which Larry relies, *Pulliam v. Sutton, supra,* is a case in which modification of visitation rights was sought. 728 S.W.2d at 253. It was decided by the western district of this court. In *Pulliam* the court acknowledged that "[t]he authority of the court to modify visitation rights is limited to circumstances in which the modification would serve the best interests of the children. Section 452.-400.2, RSMo 1986." *Id.* It also stated the requirements for modifying a custody decree, saying:

> In order to modify a custody decree, the court must find that: (1) facts arising since the prior decree have given rise to change in circumstances of the child or his custodian, and (2) modification is necessary to serve the best interests of the child.

*Id.* The court, in *Pulliam,* reversed the trial court's order modifying visitation rights. It stated, as its reason for reversing the trial court, "There was no evidence that any circumstances of the children or of appellant had changed since the date of the decree or that the limitations on respondent's visitation had operated to the disadvantage of the children." *Id.* at 254. "On Motion for Rehearing," the court, in a per curiam opinion, addressed a challenge to its holding "that a change in the visitation rights of a non-custodial parent must, in like manner to a change in custody, be supported by evidence of a change in circumstances of the child or his custodian." *Id.* It concluded, "If there be ... a divergence in views among the districts, which is not at all certain, this court adheres to

---

**3.** Larry filed a "Counter Petition for Modification of Decree of Dissolution as to Child Support and Custody" which sought an increase in the amount of child support that the dissolution decree had ordered Sandra to pay. It also sought "full custody of the minor children."

The trial court awarded an increase in the child support that Sandra was required to pay. That order was not appealed.

**4.** Respondent filed no brief with this court.

the view expressed in the principal opinion...." *Id.*

This court respectfully declines to follow *Pulliam.* This court finds the assessments that follow persuasive with respect to what is required in order to modify or define reasonable visitation rights granted to a noncustodial parent.

In *Gayman v. Gayman,* 559 S.W.2d 617 (Mo.App.1977), the western district, prior to its opinion in *Pulliam,* quoted from § 452.-400.2, RSMo Supp.1973, an earlier revision of RSMo Supp.1991, as follows:

The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child, but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger the child's physical health or impair his emotional development.

559 S.W.2d at 618. The quoted language from the 1973 Supplement is identical to the language in the first sentence of the statute applicable here, § 452.400.2, RSMo Supp.1991.

After quoting from the statute, the court, in *Gayman,* made the following observation regarding its language:

It leaves no room for doubt that the "best interests" of the child is the polestar to guide on when charting restrictions to parental visitation rights.

*Id.* And:

Deference should be given to the trial court's assessment of what "best" serves the interests of the child in matters pertaining to visitation rights,....

*Id.*

In *Blankenship v. Blankenship,* 699 S.W.2d 44 (Mo.App.1985), the eastern district of this court affirmed a trial court's order modifying a father's visitation rights by increasing the hours provided for his daughter to visit him on "every other weekend." In so doing, the court pointed out

that the change "was not to change custody as contemplated by § 452.410, RSMo 1978, but one to remove the limitations relating to the situs of overnight visits." *Id.* at 45. The court quoted § 452.400.2, RSMo Supp.1983, which is identical to the first sentence of the 1991 Supplement version, the part of the statute applicable to this case. The court stated its only concern regarding the appeal "[was] whether the trial court could have found the modification served the best interest of [the] daughter." 699 S.W.2d at 45. It found that the evidence was sufficient to support such a determination.[5]

In *Keith v. Keith,* 708 S.W.2d 350 (Mo. App.1986), this court considered a mother's claim "that the trial court erred in not granting her visitation rights with respect to [her daughter] (and in refusing to modify [a prior order]), for the reason that 'a change of circumstances had occurred and modification would serve the best interest of [the daughter].'" *Id.* at 352. In denying the appellant's claimed error, this court quoted §§ 452.400.1 and .2, RSMo 1978, V.A.M.S. It held that "[a] determination of visitation rights will not be overturned unless the appellant demonstrates that the order was not in the best interests of the child." 708 S.W.2d at 352.

More recently, in an en banc opinion, this court stated:

In matters pertaining to visitation rights, this court should accord due deference to the trial court's assessment of what serves the best interests of the child. *Keith,* 708 S.W.2d at 352. A determination of visitation rights will not be overturned unless the appellant demonstrates that the order was not in the best interests of the child. *Id.* Where both parties are proper parents, each has a right to reasonable access to the children. *Id.* Overnight visits may be a part of reasonable visitation rights within the meaning of § 452.400, *Id.* at 352–

---

5. One judge dissented, speaking in terms of "change in circumstances which would justify a modification of the original custody provisions." *Blankenship,* 699 S.W.2d at 46 (Crandall, J., dissenting). The dissent argued that "[i]n order to modify a child custody decree, the change of

circumstances required by statute must be *significant,*" *Id.* (emphasis in original), citing *Dorris v. Dorris,* 623 S.W.2d 47, 48 (Mo.App.1981), a change of custody case to which § 452.410, RSMo 1978, rather than § 452.400, RSMo 1978, applied.

353, and thus not governed by the provision of § 452.410 which requires certain proof before a prior custody decree is modified. *Id.* The trial court may believe all, part or none of the testimony of a witness. *Id.*

The best interest of the child is the principal factor. *Winters v. Winters,* 617 S.W.2d 585, 590–591 (Mo.App.1981); *Gayman,* 559 S.W.2d at 618. *In Re Marriage of Amos,* 843 S.W.2d 946, 950 (Mo.App.1992).

No evidence was required under § 452.-400.2, RSMo Supp.1991, "that a change had occurred in the circumstances of the children or their custodian."

■ Insofar as the best interests of the children are concerned, there was evidence that Sandra, because she resided in California, had been unable to exercise "liberal visitation rights" with the children. Larry was asked the following questions regarding what would be in the best interests of the children and fair to him and to Sandra and gave the following answers:

Q. Okay. And can you suggest to the Court a time period that would be in the best interest of the children and be fair to you and fair to Mrs. McFarland?

A. Yes.

Q. And what would that suggestion be?

A. Well, I—I feel that she should have them at least two months out of the year. But I'd like to—in the summertime. But I'd kind of like to have them in the summer, too, you know. We tried to work this out, but it doesn't seem to—seem to work out, you know.

Q. Okay. But—But you're saying that—that you think two months out of the summer would be appropriate?

A. Yes, sir.

Q. And what's your feeling about the—every other year for Christmas vacation?

A. I have no problem with that.

Q. Okay. You think that would be just fine with them.

A. Yeah.

The general assembly has declared Missouri's public policy to be that children should have "frequent and meaningful contact with both parents after the parents have separated or dissolved their marriage." § 452.375.3. This is one of the factors that a court is to consider in awarding custody of children. "The factors enumerated in § 452.375 [RSMo 1978, V.A.M.S.], although dealing with custody, are among the ones which the trial court may consider in determining whether there should be a change in visitation rights." *Keith v. Keith,* 708 S.W.2d at 352 (footnote omitted). Further, "[e]very [child] needs not only the guiding hand of his [or her] father but also the feminine influence of his [or her] mother." *Smith v. Smith,* 435 S.W.2d 684, 687 (Mo.App.1968).

The modification of Sandra's visitation rights provides the means whereby the children can have more frequent and meaningful contacts with their mother, thereby enabling them to have meaningful parental relationships with both parents. The modification permits the children to experience the guiding hand of both their father and their mother. There was sufficient evidence from which the trial court could find that the modification was necessary to serve the best interests of the children. The first point is denied.

Larry's second point on appeal asserts the trial court "erred and abused its discretion in overruling [his] motion for continuance ... on June 22, 1992." He argues that the motion for continuance was based, in part, on Sandra's failure to respond to certain interrogatories and requests for production of documents and that he "was denied due process of law."

The genesis of Larry's complaint is the manner in which the trial court set this case for trial. Sandra filed a motion requesting the case to be set for trial and gave notice that the motion would be presented to the court on March 5, 1992. The trial court, an associate circuit judge who apparently was specially assigned to hear the case, set the case for trial for June 22, 1992. Larry's complaint is two-fold. He says "that the request did not comply with [local court rules] in that there was no certification that all discovery was concluded and the cause at issue." He further

complains that Sandra had filed responses to interrogatories, but had not served copies of those responses on his attorney and that Sandra failed to respond to a request for production he had filed.

A trial court has broad discretion in administering discovery rules. We should reverse the trial court's rulings in such matters only when we find an abuse of discretion. *State ex rel. Metropolitan Transportation Services, Inc. v. Meyers,* 800 S.W.2d 474, 476 (Mo.App.1990). A trial court abuses its discretion when its ruling "is clearly against the logic of the circumstances then before the court and so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.; State ex rel. Webster v. Lehndorff Geneva, Inc.,* 744 S.W.2d 801, 804 (Mo. banc 1988).

*Connelly v. Schafer,* 837 S.W.2d 344, 350 (Mo.App.1992). Or, as stated in *Seabaugh v. Milde Farms, Inc.,* 816 S.W.2d 202 (Mo. banc 1991):

> As a general principle, the grant or denial of a continuance is largely within the discretion of the trial court. *Collins v. Director of Revenue,* 691 S.W.2d 246, 254 (Mo. banc 1985); *Rule 65.01....* The denial of a continuance is rarely reversible error, but the trial court does not enjoy absolute or arbitrary discretion. *Missouri Public Service Company v. Argenbright,* 457 S.W.2d 777, 785 (Mo. 1970).

*Id.* 816 S.W.2d at 207.

Rule 61.01 provides means for enforcement of discovery. There is no claim by Larry that he sought relief under that rule. The relief that was sought was a continuance from the June 22 trial date. Rule 65.01 permits a court, "for good cause shown," to continue a case.

■ The brief filed on Larry's behalf makes no claim that he was prejudiced by the trial court's denial of his application for a continuance. Whether prejudice resulted is a proper factor for consideration in determining whether a trial court abused its discretion by denying an application for continuance. *See In Interest of C.L.L.,* 776 S.W.2d 476, 477 (Mo.App.1989).

With respect to the part of Larry's complaint that is based upon interpretation and application of certain local court rules, this court has previously observed that:

> The court that enunciates a rule is the best judge of that rule. *State ex rel. Mo. Hwy. & Transp. Commn v. McCann,* 685 S.W.2d 880, 884 (Mo.App.1984). Thus, a higher court is reluctant to interfere with a court's construction of its own rule. *State ex rel. Logan v. Ellison,* 267 Mo. 321, 184 S.W. 963, 964 (Banc 1916); *Braxton v. Bi–State Dev. Agency,* 728 F.2d 1105, 1107 (8th Cir. 1984). *See generally* 21 C.J.S. *Courts* § 131 (1990).

*Midwest Materials v. Village Dev. Co.,* 806 S.W.2d 477, 484 (Mo.App.1991).

■ This court defers to the trial court with respect to its interpretation and application of its local court rules relating to setting cases for trial. With respect to Larry's other complaints, this court does not discern that he was prejudiced by the denial of his application for a continuance. The trial court committed no abuse of discretion in setting the case for trial and thereafter denying Larry's request for a continuance. Point II is denied.

■ Larry's third point asserts that the trial court erred in denying his application for change of judge. He contends that the application for change of judge was filed within the time permitted by Rule 51.05(b), and that the trial court was, therefore, required to grant the request. That rule states:

> The application must be filed within thirty days after the answer is due to be filed if the trial judge is designated at the time the answer is due. If no answer is required to be filed, the application must be filed no later than thirty days after the filing of the civil action....

Rule 51.05(a) requires an application to be granted if it is timely filed.

Larry contends that Sandra's motion to modify visitation was a "petition" that required an answer to be filed. The pleading

upon which the case was tried was an amended motion to modify that was filed March 23, 1992. On April 1, Larry filed a motion to dismiss the amended motion. The trial court did not rule on the motion to dismiss until the day of trial, June 22. Larry's application for change of judge was filed that same date. Larry argues, based on his claim that an answer was required, that, by reason of Rule 55.25(c), he had ten days following June 22, 1992, in which to file an answer. Thus, by his analysis, he had thirty days after the answer was due (or until August 1, 1992) in which to file his application for change of judge.

Larry concedes "that if no answer was required ..., the request for change of judge was untimely." He points to the language of *Hayes v. Hayes*, 363 Mo. 583, 252 S.W.2d 323 (banc 1952), as the basis for concluding that an answer is required. He argues, with respect to *Hayes*, as follows:

> The Supreme Court in *Hayes v. Hayes* [363 Mo. 583, 252], S.W.2d 323 (Mo. banc 1952) examined the nature of a motion to modify a prior divorce decree in connection to the entitlement of a change of judge (then known as a "change of venue"). The question was whether a motion to modify was a "civil suit" such to allow the right of a change of judge under the existing rules. The Court found at Page 327 that:
>
> > But the decisive and important consideration is not that a motion to modify is a proceeding in continuation of the original action; the decisive question is whether a proceeding on such a motion is the kind of independent proceeding which does in fact adjudicate rights of individuals irrespective of and not conditional upon what is provided in the original decree.
>
> The Court went on to examine the nature of a motion to modify a divorce decree finding:
>
> (1) that it is an independent proceeding;
>
> (2) the motion itself is treated as a petition in original action;
>
> (3) the motion must state a claim upon which relief may be granted or is insufficient;
>
> (4) proper notice of the motion must be given the party adversely affected and the original divorce decree is final and binding and cannot be disturbed except upon a proceeding and hearing held for that very purpose.
>
> (5) The Movant may be successful only upon proof of new facts, conditions and circumstances arising or coming into existence since the rendition of the original decree;
>
> (6) the proceeding is one in which new rights, based upon new facts are adjudicated and that motions to modify are not mere adjuncts to the original proceeding and do not relate to the manner in which the judgment shall be given its proper effect.
>
> Having examined the above, the Court found at Page 328 that:
>
> > It is clear from what has been said that a Motion to Modify a Final Decree of Divorce is a "civil suit" in that it is in the nature of an independent civil proceeding for the enforcement and protection of rights of individuals.

Larry contends that the assessment of motions to modify in *Hayes* requires a finding that such a proceeding is a "civil action" for purposes of Rule 42.01 and, therefore, that Rule 55.01, the rule that prescribes what pleadings are required, applies. Rule 55.01 states, with respect to "civil actions," that "[t]here shall be a petition and an answer."

In making this assessment, Larry disregards the operative words the court used in *Hayes* immediately preceding its reference to an independent civil proceeding. The court did not say that a motion to modify was an independent civil proceeding. It said a motion to modify was "in the nature of an independent civil proceeding." 252 S.W.2d at 328. As such, a party to a motion to modify was entitled to obtain a change of judge.

And, in *Pikey v. Pikey*, 605 S.W.2d 215 (Mo.App.1980), the eastern district of this court again pointed out "that a motion to

modify a divorce decree, in so far as it affects custody of minor children, *is in the nature* of an independent proceeding." *Id.* at 216 (emphasis added). The court further pointed out in *Pikey* that even so, other requirements for bringing civil actions did not apply. Particularly, at the time the action in the trial court was taken in *Pikey,* in 1976, service of summons was not required in order "to meet the requirements of due process" that enabled the trial court to adjudicate the issues presented by the motion to modify.[6]

The lack of a requirement for service of process in a motion to modify a dissolution decree changed when § 452.455, RSMo 1986, was enacted in its present form.[7] However, the amendment to § 452.455, RSMo 1986, did not change the nature of a petition (or motion) to modify[8] so as as to make it a "civil action" for purposes of Rule 55.01. A motion to modify remains a proceeding ancillary to an underlying dissolution action. The 1979 amendment that is embodied in § 452.455, RSMo 1986, did nothing more than impose a requirement for the notice of a motion to modify to be given to an adverse party by means of service of summons.

Notwithstanding the foregoing, Larry suggests that the provision in § 452.455.1, RSMo 1986, that states that responsive pleadings to petitions (or motions) to modify "may be filed as in any original proceed- ing" (emphasis added) requires that an answer be filed. Larry argues that because § 452.455, RSMo 1986, is part of a "uniform act" that was adopted by the general assembly, it should be interpreted differently from other statutes; that it should be construed as requiring a responsive pleading to be filed. Larry has cited no authority for his "uniform act" argument. This court does not find that argument compelling.

Even if this court agreed with the "uniform act" argument, § 452.455, RSMo 1986, does not apply to the circumstances in this case. The statute applies to petitions (or motions) "for modification of child custody decrees filed under provisions of section 452.410, or sections 452.440 to 452.-450." As noted, the trial court's order that is the subject of this appeal was entered pursuant to § 452.400.2, RSMo Supp.1991. That statute is not one to which § 452.-455.1, RSMo 1986, applies. Point III is denied. The order of the trial court is affirmed.

CROW, P.J., and SHRUM, J., concur.

---

6. Although *Pikey* is a 1980 opinion, the actions taken by the trial court were based on a 1976 motion to modify. The motion to modify in *Pikey* was filed and acted upon by the trial court prior to the enactment of H.C.S.S.B. 154, Mo. Laws 1979, *infra,* n. 7. *See also,* § 452.455, RSMo 1978, *infra,* n. 7.

7. *See* H.C.S.S.B. 154, Mo.Laws 1979, that became § 452.455, RSMo Supp.1979, and is now § 452.455, RSMo 1986. It provides, in the part pertinent to this appeal:

    1. Any petition for modification of child custody decrees filed under the provisions of section 452.410, or sections 452.440 to 452.-450, shall be verified and, if the original proceeding originated in the state of Missouri, shall be filed in that original case, but service shall be obtained and responsive pleadings may be filed as in any original proceeding.

      .      .      .      .

    Prior to 1979, § 452.455, RSMo 1978, provided:

Before making a decree under the provisions of section 452.410, or sections 452.440 to 452.550, reasonable notice and opportunity to be heard shall be given to litigants, any parent whose parental rights have not been previously terminated, any child twelve years of age or older, and any person who has physical custody of the child. If any of these persons is outside this state, notice and opportunity to be heard shall be given pursuant to section 452.460.

8. The following guidance is offered in 2 Mo. Family Law, § 25.4 (Mo.Bar 4th ed. 1988):

    Generally, no responsive pleading is required, though, here again, it is certainly prudent practice to file an answer or other responsive pleading in a timely manner. The opposing party should be given timely notice of the hearing.