**R.W.H., Appellant,**

v.

**D.M.H., Respondent.**

No. 66006.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 23, 1995.

Steven C. Bublitz, Hazelwood, for appellant.

John Joseph Campbell, Washington, for respondent.

CRANDALL, Judge.

R.W.H. (father) appeals from the judgment of the trial court, on the cross-motions of both parties, to modify the decree of dissolution of his marriage to D.M.H. (mother) regarding child custody and child support. We affirm in part and reverse and remand in part.

The parties' marriage was dissolved in October 1991. There were two children born of the marriage: a daughter born January 27, 1981; and a son born July 30, 1986. The decree provided that mother and father have joint legal custody of the children, with primary physical custody in father. Mother was granted temporary custody and certain visitation rights. Neither party was required to pay child support to the other.

Father filed his motion to modify in March 1993. In the motion, he alleged, *inter alia,* that mother physically abused the children, that she left them unsupervised during summer visitation, that she did not provide sufficient living quarters for them, and that she had experienced an increase in income since the decree of dissolution was entered. He sought full custody of the children, supervised visitation for the children with mother, and child support from mother.

Mother brought a cross-motion to modify. She alleged, *inter alia,* that father interfered with her visitation rights, did not comply with the joint custody order, attempted to alienate the children from her, and emotionally abused the children. She sought full custody of the children, reasonable visitation rights for father, and child support from father.

After hearing extensive evidence, the trial court found a substantial change of circumstances, as follows: the parties experienced difficulties in exercising visitation as well as in reaching decisions and communicating about the children; there were allegations of emotional abuse of the children directed to both parties; there were allegations of telephone harassment; there was a lack of supervision of the children; and mother exercised "inappropriate and inadequate parenting skills." Accordingly, the court modified the decree of dissolution. The court found

that joint custody was no longer appropriate and awarded primary legal and physical custody of both children to father. With regard to daughter, the court found that visitation and custody by mother might impair daughter's emotional development; and ordered supervised visitation to be monitored by, and take place in the home of, father's mother. The court did not alter mother's temporary custody and visitation rights with regard to son. The court required father to continue to provide counseling for both children for no less than six months, unless such counseling was terminated by the counselor prior to that time. The court departed from the Form 14 calculations and ordered mother to pay child support of $15.00 per child per week, but the court failed to set forth the rationale for its departure from the Form 14 guidelines.

We view the evidence most favorably to the decree. At trial, father's expert, a psychologist who treated daughter and son as patients, testified that both children experienced more stress and anxiety when they were with mother than when they were with father and that daughter's relationship with mother was particularly strained. In her opinion, son's anxiety stemmed from "the divorce and ... custody issues and to him being caught in the middle." She reported that son had frequent nightmares. When asked whether either party should have a third person present when visiting with the children, the psychologist responded:

In my experience, that type of visitation is normally suggested when there has been evidence or reason to suspect physical or sexual abuse.... I don't find that, although I do think there may be some emotional abuse. And Ryan, especially, has difficulty—any seven-year-old would—in protecting himself and knowing how to respond to that. I think his sister is better equipped to deal with things than Ryan. It's a tough one. It may be safer for Ryan if there's a third person, but it does impose a lot of restrictions on the quality of time and the context of interaction for him and his mom.

She suggested joint counseling with daughter and mother to resolve daughter's anger toward mother. She also suggested that both

parties come together for counseling to provide an environment for son in which he felt free to express his negative feelings toward them.

Father testified that he and mother argued about the children. He alleged that mother harassed him with telephone calls, to such an extent that he got a full order of protection against her. He and mother also had altercations in front of the children, on one occasion at a church function for the children. He reported that daughter had "run away" on two different occasions.

Mother testified that she worked at a fast food restaurant for about 28 to 35 hours per week, earning a monthly gross income of about $775.00. When the children were at her home for summer vacation, she left them alone until about 11:00 a.m. in the morning while she worked. She stated that father interfered with her scheduled visitation and discouraged the children from communicating with her at other times. She said that father didn't consult with her about medical treatment for the children and failed to inform her about the children's progress in school or about school functions. She reported that son was more pleasant when he was alone with her and she experienced no disciplinary problems with him. She admitted that she and daughter argued and that daughter wanted nothing to do with her at that point in time. She stated that she did not want to force daughter to have contact with her.

Both of the children testified *in camera*. Daughter, who was 12 years of age at the time of the hearing, stated that she wanted to live with father and did not want to see or talk to mother. She said that all she did at mother's house was babysit and do household chores. She also said that she and mother fought "all the time." She reported that most of the altercations between her and mother involved yelling and screaming at each other. There was an incident in December 1993, however, where a disagreement between them escalated to the point where

mother pushed daughter against the refrigerator.

Son, who was seven years of age at the time of the hearing, testified that he, too, wanted to live with father and visit mother; but indicated his desire to visit mother even more often, whether or not daughter accompanied him. He said he was afraid when mother argued with either father or daughter.

In his first point, father contends the trial court erred in failing to order mother's visitation with son be supervised. The court found that "reasonable visitation of [son] by the [mother] does not endanger [son's] physical health or emotional development so as to require supervised visitation...." Father argues that permitting son to continue his visitation in accordance with the original decree was against the weight of the evidence.[1]

■■■ Our standard of review is set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We do not review the case *de novo*. The power to set aside the decree on the ground that it is against the weight of the evidence should be exercised with caution and only if there is a firm belief that the decree is wrong. *Id.* Furthermore, it is the prerogative of the court to determine the credibility of the witnesses, accepting or rejecting all or any part of the testimony. *Rumbolo v. Phelps*, 759 S.W.2d 894, 895 (Mo. App.1988).

■■■ In a child custody proceeding the welfare of the children is the primary consideration. *Rumbolo*, 759 S.W.2d at 895. Unlike most litigation in which the judge is a neutral arbiter, in a custody proceeding the court has an affirmative duty to enter a decree that is in the best interests of the children; the best interests of the parents are secondary. *Luther v. Vogel*, 863 S.W.2d 902, 904 (Mo.App.E.D.1993). We therefore accord the trial court great deference. *Id.*

---

1. There is no challenge to the court's decision that daughter's visitation with mother be supervised. Because this is not an issue on appeal, we do not address whether the supervised visitation was or was not necessary.

The psychologist who treated the children and testified as father's expert did not recommend that mother's visitation with son be supervised, but equivocated when asked that question directly. Her suggestion regarding future counseling with son involved the participation of both parties, not just mother's. She indicated that son's stress and anxiety stemmed from the dissolution and from the parties' inability to cooperate, not just from mother's lack of parenting skills. In addition, son's own testimony was that he not only wished to continue visiting mother but wanted to increase his visitation time. *Compare Van Pelt v. Van Pelt*, 824 S.W.2d 135 (Mo.App.1992) (court's denial of visitation not an abuse of discretion where all three children said in chambers that they did not want visitation with mother). Mother's testimony indicated she had no disciplinary problems with son when he visited alone. Although son experienced anxiety when mother and daughter argued, the court's change of daughter's visitation with mother should eliminate his future exposure to their hostility.

■ In addition, it is within the purview of the court to order different visitation for different children, for the court considers what is in the best interests of each child with regard to each parent. *See Keith v. Keith*, 708 S.W.2d 350 (Mo.App.1986) (court denied mother's motion to modify original decree which denied her all visitation rights with 15 year old daughter and granted her certain visitation rights with eight year old son). Our review of the record does not leave us with the firm impression that the court was wrong in allowing son to continue with the visitation set forth in the original decree. *See Murphy*, 536 S.W.2d at 32. The trial court did not abuse its discretion in not requiring that son's visitation with mother be supervised. Father's first point is denied.

■ In his second point, father asserts the trial court erred in failing to limit or restrict mother's visitation with son. Section 452.400.2, RSMo (1994) governs the modification of an order granting or denying visitation rights. The statute requires the court to consider the best interests of the child, and to not "restrict a parent's visitation rights unless it finds that the visitation would endanger the child's physical health or impair his emotional development." The court specifically found that visitation for son would not endanger him physically or impair his emotional development. The endangerment-impairment standard is the same for the court's either ordering supervised visitation or restricting visitation. Our holding under point one that the court did not abuse its discretion in failing to order supervised visitation for son is therefore dispositive of the issue regarding restricted visitation raised in point two. Father's second point is denied.

In his final point, father contends the court erred in calculating the amount of child support mother owed, because the court failed to make a specific finding that application of Form 14 would be inappropriate or unjust. Mother concedes that the court ordered her to pay less than the Form 14 amount and did not make the requisite finding with respect thereto.

Rule 88.01(e) establishes a rebuttable presumption that child support calculated pursuant to Form 14 is the amount to be awarded by the trial court. The rule also provides that a written or specific finding on the record that the Form 14 amount, after considering all relevant factors, is unjust or inappropriate will overcome the presumption.

■ Here, although the Form 14 calculation indicated that mother should pay $254.00 per month, the court ordered mother to pay child support of only $15.00 per week per child. The record does not reflect how the court arrived at this figure or what factors made the Form 14 amount inappropriate. We therefore reverse the judgment of the trial court and remand this cause for the court either to enter a finding that the Form 14 amount was unjust or inappropriate or to order the Form 14 amount. Father's third point is granted.

The judgment of the trial court is affirmed in part and reversed in part and the cause is remanded to the trial court.

CRANE, P.J. and DOWD, J., concur.